(89 South. 688)

No. 23043.

**RODGERS v. S. H. BOLINGER CO., Limited.**

(Oct. 4, 1921.)

*(Syllabus by the Court.)*

Reformation of instruments ⊜⟶20, 45(2)— Writing may be reformed when failing through fraud or error to express the agreement.

When parties reduce their contract to writing, and, when the terms of the contract exhibit no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses their true and complete understanding. Equity may reform even contracts unambiguous in their terms, on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but, to support such relief, there must be clear proof of the antecedent contract and of the error in reducing it to writing.

Appeal from Second Judicial District Court, Parish of Bossier; John N. Sandlin, Judge.

Suit by J. S. Rodgers against the S. H. Bolinger Company, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Murff & Mabry, of Shreveport, for appellant.

Scheen & Blanchard, of Shreveport, for appellee.

Statement of the Case.

MONROE, C. J. On December 21, 1910, plaintiff purchased from defendant by notarial act a tract of land in Bossier parish, and on October 1, 1917, he brought this suit, alleging that he negotiated the purchase with M. S. Bolinger, defendant's "vice president and agent, agreeing to pay $1,500 for the land; that M. S. Bolinger was also a

149 LA.—18

notary, and that on the date mentioned, S. H. Bolinger, defendant's president, having signed the act of conveyance before him acting in that capacity, he brought it to petitioner's residence for his signature; that petitioner was in bed "and very sick," and that, reposing confidence in said M. S. Bolinger, he asked him to read the act to him; that he "pretended to read over the same to your petitioner, but, either through oversight or purposely and with intent to perpetrate a fraud upon your petitioner, failed to read or call petitioner's attention to a certain clause printed in small letters at the top of the second page and separated from the other stipulations of the deed, which clause reads as follows: 'Except S. H. Bolinger Company, Limited, reserves the mineral rights on above land, also right of way for logging railroad and timber road, and for a period of ——— years from date the merchantable timber'—that no mention had ever been made of any such reservation, and, the same not having been read to him, he had no knowledge or intimation that any such reservation was being made, or he would not have purchased the land or signed the deed for the same."

He prays for judgment declaring the reservation void, and, in the alternative, for other relief.

Defendant denies the allegations of fraud or error, and alleges that the contract evidenced by the act is the only one that was entered into between it and plaintiff.

Plaintiff testified that there was nothing said in his negotiation with M. S. Bolinger about any reservation of mineral rights, but that it was understood that the timber did not pass with the land, and that defendant was allowed, without objection from him, to exercise all rights relating to timber, rights of way, etc., mentioned in the reservation, though nothing concerning such

rights were read to him as being written in the act.

Mrs. Rogers, who was present at the reading and signing of the act, testified that she was able to remember that the reservation was read, but she was not able to remember other very important provisions of the act that were read, or whether they were read, or not. Plaintiff does not appear to have been "very sick," since, although he had had an attack of la grippe, his physician had not paid him a visit between December 8, preceding the signing of the act, and December 21, when the signing took place, and it is not shown that any visit was paid on or after the date last mentioned. It is shown that the reservation in question was printed in the same type as the other provisions of the act, and, as it followed the description of the land, it is a matter of no significance that it appeared at the top of the second page. It is also shown that the form upon which the conveyance was executed, with the reservation in question, was one which the defendant ordinarily used; it having been its policy at that time to sell its lands subject to that reservation. M. S. Bolinger testified that he was unable to remember whether the reservation of the minerals had been mentioned, or whether he had read the act, but that he was confident that he had done so, because it was his habit to read acts prepared by him, and that he was quite certain that, if he read it, he read all that it contained. After the execution of the act, plaintiff appears to have made no objection to defendants exercising the timber rights that were included in the same reservation, and it was only some five or six years after the act was executed, when oil was developed in that section, that he seems to have discovered, or thinks that he discovered, that the reservation was not read to him.

## Opinion.

The petition herein alleges that plaintiff was in bed "and very sick" when he signed the notarial act here in question, and that the exception and reservation were in very fine print, different from that of the rest of the instrument and far separated therefrom; and those matters are emphasized in the brief of plaintiff's counsel, which suggests the idea that plaintiff may have been unable to sign the contract, and also contains the statement that M. S. Bolinger was not only defendant's agent, but its vice president and a "big stockholder." Those allegations are not sustained by the record, and may be left out in considering the case. Plaintiff's physician testifies that plaintiff had an attack of la grippe in December, 1910, but he does not say whether it was light or serious; that he visited him on December 7th and 8th, and had his records up to December 15th, but he was unable to say that he paid any visit after that of the 8th; whereas the act was signed on December 21st. Plaintiff does not say that he was unable to read the act, or that he was in bed when it was presented to him for signature. His testimony reads in part:

"I had confidence in him, and I supposed it was all right. * * * Q. Mr. Rodgers, was there anything to prevent your reading the deed the day that you signed it? A. Nothing, only I was sick and did not feel like fooling with it."

Our conclusion is that he was not in bed and was not "very sick." It was shown by the evidence that the exception and reservation was not in very fine print, different and far apart from the rest, but was in the same print as the rest, in the body of the instrument, at the top of the second page, and immediately following the description of the land. As to the interest of M. S. Bolinger in the defendant company, we find no evidence, save that showing that he was vice president and had charge of the land. For

aught that appears, he may have owned no stock, or barely enough to qualify him as a director or vice president. His testimony impresses us with the conviction that he was unusually scrupulous in the giving of it.

It has been said by this court (Wells v. Blackman, 121 La. 394, 46 South. 437) that:

"It is in order that each of the parties to the making of a contract may express with exactness his own idea, and clearly comprehend that of the other, and to afford conclusive proof of the common understanding, that the art of writing and the expedient of the authentic act are resorted to; hence the recollection of one of the parties to a contract witnessed by an authentic act, unsupported by conclusive proof of fraud or error, cannot prevail against the terms of the act."

In other cases it has been held that:

"When parties reduce their contracts to writing, and when the terms of the writing exhibit no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete undertaking of the parties. * * * Equity may reform * * * even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing." Ker v. Evershed, 41 La. Ann. 15, 6 South. 566 (syllabus), cited in Succession of Bellande, 42 La. Ann. 245, 7 South. 535, in which last-mentioned case it was said: "The evidence in this case furnishes no such clear proof."

And so we say here:

It is alleged in the petition that the reservation of the minerals does not secure to defendant the right of ingress and egress or the exclusive right "to develop said land for minerals," but those contentions are without merit, and plaintiff's counsel do not mention them in their brief.

The judgment appealed from is therefore affirmed.