CRAIS ET AL. v. CASTAING ET AL.

———

(May 19, 1930. Opinion and Decree.)

———

Hiddleston Kenner, of New Orleans, attorney for plaintiff, appellant.

Legier, McEnerny & Waguespack, of New Orleans, attorneys for Homeseekers' Building & Loan Association.

Jno. Wagner, of New Orleans, attorney for Anthony Rumore and heirs of J. Oddo, appellees.

Sidney F. Gautier, of New Orleans, attorney for Armand J. Castaing, appellee.

HIGGINS, J. Plaintiffs William C. Crais and the Union Homestead Association sue defendants, Armand J. Castaing and the Homeseekers' Building & Loan Association for the reformation and correction of an act of sale of real estate passed before Robert Legier, notary public, on July 8, 1921.

The original petition, which was filed October 5, 1921, avers that on November 21, 1919, plaintiff purchased from the Union Homestead Association lots Nos. 7, 8, and 9 of square 1537, fronting on St. Bernard avenue of this city; that petitioner erected his residence on the whole of lot No. 7 and reserved a strip about 4 feet in width of lot No. 8, for a driveway; that, during the latter part of May, 1921, petitioner agreed with the defendant Castaing to sell him the whole of lot No. 9 and also lot No. 8, except the 4-foot driveway, for the price and sum of $2,400 cash; that the said 4-foot driveway extended the full depth of lots 7 and 8, and on this line was erected a boundary fence constructed of poultry wire; that on July 8, 1921, petitioner went to the office of Robert Legier, notary public in the city of New Orleans, for the purpose of completing the transaction, and believing the description contained in the act of sale prepared by the notary conformed to the agreement which the petitioner had with Castaing, signed the act of sale to the Homeseekers' Building & Loan Association, which purchased the property for the account of Castaing, and which act of sale was properly recorded in the conveyance office of this city; that in the said act of sale, through error, the whole of lots 8 and 9 were conveyed instead of reserving to petitioner the 4-foot strip of driveway taken from lot No. 8 and adjacent to lot No. 7; that petitioner had only agreed to sell and Castaing had only agreed to purchase all of lot No. 9 and a portion of lot No. 8, which piece or portion would have measured 70 feet front on St. Bernard avenue, but that through the aforesaid error the whole of lot No. 8 was included, making the piece of property conveyed by petitioner to the Homeseekers' Building & Loan Association measure 74 feet front on St. Bernard avenue; that the said act of sale was not read by the notary public at the time of the passing thereof, and that, due to the fact that the property was incumbered with a vendor's lien and mortgage in favor of the Union Homestead Association, it was necessary to have the secretary of the homestead appear at the passing of the act of sale and release the property from the homestead's vendor's lien and mortgage; that the secretary signed the release believing that he was only releasing that portion of the three original lots which remained after reserving the 4-foot driveway and lot No. 7 to the plaintiff; that thereafter, on July 15, 1921, the petitioner being unaware of the fact that he had made the above error, conveyed lot No. 7 and the 4-foot driveway to the Union Homestead Association, in order to secure a loan for the purpose of making further improvements on his property; that, about one month after the act of sale was passed before Robert Legier on July 8, 1921, petitioner discovered that defendant Castaing was removing the fence which separated the driveway from the remaining portion of lot No. 8 and that petitioner protested against the same and was informed by Castaing that he would replace the fence after he had completed the improvements on the property which he had purchased from pe-

titioner; that a few days after, Castaing informed plaintiff Crais that he would not replace the fence on its original line because his title called for 74 feet and he intended to retain all the property which the title conveyed to him; that on September 2, 1921, petitioner made written demand upon Castaing to join in an act of correction to correct the error in the description contained in the act of sale passed before Robert Legier, and to make it conform to the agreement and intention of the parties, but that Castaing through his attorney, on September 7, 1921, in writing, refused to do so; that on September 27, 1921, the petitioner made a like demand upon the defendant Homeseekers' Building & Loan Association, which also refused to comply with the demand.

Petitioner prays that the act of sale passed before Robert Legier on July 8, 1921, be reformed and corrected so as to reserve a 4-foot driveway to petitioner in accordance with the original agreement between the petitioner and Castaing.

On October 13, 1921, Castaing filed an exception of vagueness which was overruled on July 11, 1922.

On January 26, 1922, defendant Castaing filed an exception of no right or cause of action and also answered denying the allegations of plaintiffs' petition and averring that the description contained in the act of sale passed before Robert Legier, notary public, on July 8, 1921, was correct, and that the act was read by the notary, and the plaintiff had made no objection to the description at that time.

On October 10, 1921, the Homeseekers' Building & Loan Association filed an exception of vagueness.

On January 18, 1922, the Homeseekers' Building & Loan Association answered and denied the allegations of the original petition, averring that the act of sale was in accordance with the understanding of the parties and that the act was read to the parties before the signing, by the notary, particularly the description and the essential parts of the act were explained to them and specially averred that the notary was not in a hurry and practiced no fraud upon the plaintiff; it further denied that the notary was employed or acted in the interest of the defendant Castaing but was acting in behalf of the defendant homestead.

On May 11, 1923, plaintiffs filed a supplemental and amended petition alleging that, at the time that Castaing agreed to purchase the property, he went on the property and made a careful inspection of it, and that it was clearly intended that he would purchase lot No. 9 and a part of lot No. 8, up to the poultry wire fence which separated the driveway from the other portion of lot No. 8; that a sketch or plan of the property showing the precise measurements was delivered to Castaing at that time; that, notwithstanding the fact that defendant knew that the 4-foot driveway was reserved to petitioner Crais, he fraudulently instructed the notary to describe the whole of lot No. 8 without excepting the driveway, and that, on the day fixed for the passing of the act of sale before Mr. Legier, plaintiff went to the notary's office, who informed him that he was in a hurry to fill another important engagement elsewhere and assured plaintiff that the act of sale was in the usual, customary form, in accordance with the terms and conditions of the agreement to purchase and that the property was correctly described, and, being hurried and harrassed by the notary public to complete the sale as quickly as possible and not suspecting any fraud, he signed the act of sale; that in signing

the act of sale he was led into the error by the misleading statement of Legier that the description of the property was correct and that the notary represented that the act of sale was in accordance with the agreement between Crais and Castaing; and that the notary was employed and acted as an agent of the defendant Castaing.

During May, 1923, the defendants also denied the allegations of the supplemental petition and filed exceptions of no cause or right of action as to it.

The exceptions of no cause or right of action filed by both defendants were tried and sustained on December 21, 1923, and the plaintiffs' suit dismissed.

The case was appealed to this court by the plaintiff. A motion to dismiss the appeal for want of jurisdiction was denied by this court on February 14, 1927. Crais vs. Castaing et al., 6 La. App. 144.

On March 28, 1927, this court reversed the judgment of the district court, holding that the petition did allege a right or cause of action, and remanded the case to the civil district court for further proceeding. See Crais vs. Castaing et al., 6 La. App. 144.

In the meantime, on June 9, 1922, the Homeseekers' Building & Loan Association, had sold the property to Mrs. Armand Castaing. On March 18, 1927, Mrs. Castaing sold a large portion of lot No. 8 and a small portion of lot No. 9 to Messrs. John Oddo and Anthony Rumore, reserving the rear part of lot No. 8 and very nearly all of lot No. .9.

On March 16, 1928, plaintiffs made Messrs. John Oddo and Anthony Rumore parties defendant. Both of these parties appeared and filed exceptions of vagueness and of no right or cause of action and mis-joinder of parties defendant. These exceptions were referred to the merits by the court. Messrs. John Oddo and Anthony Rumore then answered reserving the benefit of the exceptions, averring that they had employed an attorney to examine the title and had obtained clear mortgage and conveyance certificates, and that they did not have any knowledge or intimation of any trouble between plaintiffs and the other defendants as to the title of the property; that they bought upon the faith of the public records and were therefore innocent third parties; and that there had not been any notice of lis pendens filed by plaintiff concerning this suit in the mortgage office as required by law, in order to place third persons on notice.

It then appears that Mr. John Oddo died, and his heirs were made parties defendants by petition of plaintiffs on January 4, 1929. These heirs answered, reiterating the allegations contained in the answer filed by their deceased father.

On April 23, 1929, the defendant Castaing, reserving the benefit of the exceptions he had filed, answered the supplemental petition of plaintiffs, denying that he was in any way guilty of fraud and specially denied that there was any error, and further averring that the plaintiff signed the act of sale with full knowledge of all the facts, and specially denied that there was any such agreement or understanding between himself and plaintiff Crais as set forth in the supplemental petition filed by plaintiffs.

The case was tried on its merits on April 23, 1923, and resulted in a judgment, which was rendered on May 6, 1929, in favor of the defendants, dismissing the plaintiffs' suit. From this judgment plaintiffs have appealed.

There appears to be considerable merit in the contention of the Homeseekers' Building & Loan Association that only a moot question is now presented, due to the fact, first, that the plaintiffs have failed to ask for the reformation and correction of the act of sale by the Homeseekers' Building & Loan Association to Mrs. Armand Castaing on January 9, 1922, the petition merely praying for the correction and reformation of the act of sale by plaintiff Crais to the Homeseekers' Building & Loan Association, passed before Robert Legier, on July 8, 1921, and therefore this court would be powerless to give plaintiffs the relief sought, as the prayer is not broad enough to warrant the court in doing so; and, second, because the plaintiffs have failed to file notice of lis pendens in the mortgage office as required by Act No. 22 of 1904, and thereby permitted the defendant Castaing to sell practically all of the property to innocent third persons, who purchased upon the faith of the public records without notice, and who thereby secured valid title to the property in dispute.

The contention of the attorney of Rumore and the heirs of Oddo is that they are innocent third persons who purchased upon the faith of the public records without actual knowledge and without constructive notice as plaintiffs failed to record notice of lis pendens in the mortgage office as required by Act No. 22 of 1904, and that therefore, they cannot be bound by any secret equities resulting from mistakes or fraud between the original parties and that they have a good title to the property. This position appears to be sound in the light of the numerous authorities cited by counsel for these parties in support of this argument.

Without passing upon these issues, and giving the plaintiffs the benefit of the most favorable construction that could be placed upon these defenses by assuming that they are not well founded, the conclusion that we have reached upon the merits of the case makes it unnecessary for us to pass upon these points.

The sole issue on the merits is whether or not Crais and Castaing agreed that the 4-foot driveway taken from lot No. 8 would be reserved to Crais. Plaintiffs contend that the 4-foot driveway was reserved, and defendants contend that it was not reserved.

The plaintiffs' evidence on this issue consists of the testimony of Crais and his wife, who state that Castaing made an inspection of the property and agreed that he would pay $2,400 for the remaining portion of lot No. 8 and the whole of lot No. 9, as Mr. Crais called his attention to the fact that he wanted the driveway reserved.

Mr. Crais produced a photograph showing the driveway and the wire fence which he says existed at the time when the negotiations for the sale of the property to Castaing were entered into during May, 1921. He also produced a receipt in his own handwriting, dated May 19, 1921, whereby he acknowledged receipt of the sum of $240, 10 per cent of the purchase price of the two lots of ground known as lots Nos. 8 and 9, square No. 1538, bounded by St. Bernard avenue, Dupre, White, and Castiglione streets, measuring 35 feet front each on St. Bernard avenue by 128-145 feet in depth. Crais admits that in writing out the receipt he made an error because the defendant, Castaing, gave him $250, and when he returned a few days later he corrected the mistake. The receipt also shows further error, as the figures were corrected but not

the amount expressed in words. There appears also another error in designating the square number as 1538 instead of No. 1537. It is to be noted that the receipt calls for the conveyance of lots Nos. 8 and 9, without any reservation of any portion of lot No. 8. While it is true the lots are described as measuring 35 feet front each on St. Bernard avenue, as a matter of fact this is also an error, as lot No. 9 measures 36 feet 11 inches, and 4½ lines front on St. Bernard avenue. In view of all these errors in the receipt its value as evidence is seriously impaired.

Both Mr. and Mrs. Crais further testified that the notary was in a great hurry to catch a train at 11 o'clock on July 8, 1921, when the sale was passed and that the notary did not read the act of sale and that he signed it upon the assurance of Mr. Castaing and Mr. Legier that the description of the property was correctly set forth in the act of sale.

Mr. Hebert, who was the secretary of the Union Homestead Association, of the plaintiffs in this case, and who represented the homestead in granting a release of the homestead's vendor's lien and mortgage on the property at the time of the passing of the act of sale, while indicating that his memory of the details of the transaction was not clear, due to the great length of time intervening between the date of the act and giving of his testimony, testified that he did not remember the notary reading the act, but that he compared the description of the property in the act of sale with the description of the property in the act of release and satisfied himself that it was correct and then signed the release. This fact indicates very forcefully to our minds that Crais at that time failed to make his intention of retaining the 4-foot strip known to the notary and Mr. Hebert.

The defendants' evidence consists of the testimony of Mr. Castaing, who states that he did not have any agreement with Mr. Crais to reserve the 4-foot strip or driveway, and, while he viewed and inspected the property before purchasing it, he does not believe the fence or driveway existed at that time, but was not sure. He was very positive that nothing was said about reserving a driveway to the plaintiff Crais. He further testified that Mr. Crais furnished him with a title to the property which he in turn gave to the homestead which in turn gave it to the notary in order to draw up the act of sale. The only reason the Homeseekers' Building & Loan Association was interested in the matter was because Mr. Castaing needed money to finance certain buildings and improvements which he intended to erect on this property. He testified further that, when he was erecting the improvements on the property, about thirty days after the act of sale was passed, he tore down the wire fence and placed another feather-edge board fence on the same line for which Mr. Crais agreed to pay one-half the expense but later refused to do so; that he then filed suit against Crais for one-half of the expense of the fence and obtained judgment in the city court, which Crais paid.

Crais' explanation of this is that he did not agree to pay for one-half of the cost of erecting a fence, and that when the matter was brought to court he employed an attorney who permitted the case to go by on default.

On the issue as to whether or not the act of sale was read by the notary at the time of the passing of the act of sale, the defendants offered as a witness Mr. Robert Legier, the notary who passed the act, who testified that, while he had no distinct recollection of this particular sale, it was his cus-

tom in passing all acts of sales to read all of the essential parts of the act, including the description, to the parties before permitting them to sign; that he had been a notary in the parish of Orleans since 1897, and he was the official notary of the city of New Orleans in 1921. He denied that he had hurried the parties because he was anxious to catch a train, and pointed out that he had a home at Mandeville and that it was his custom to go there on Fridays at 4:30 in the afternoon and remain over the week end; that the schedule of the train had always been at 4:30 and that he had never taken any train at 11 o'clock in the morning.

Plaintiff Crais and his wife both testified that July 8, 1921, was a Saturday, and that Mr. Legier was anxious to take a train at 11 o'clock. Reference to a calendar showed that July 8, 1921, was a Friday.

Mr. Legier's testimony was corroborated as far as the reading of the act is concerned by Miss Odile Musson, who had worked in his office some sixteen years. She testified that, while she could not remember specifically whether or not this act had been read, she knew that it was customary for Mr. Legier to read all of his acts to the parties before permitting them to sign. The other witness to the act of sale, a young lady who worked in Mr. Legier's office, had left his employment some four years before the trial, and the defendants were unable to locate her in order to produce her as a witness.

Mr. Castaing, one of the defendants, testified that he was positive that the act of sale was read by Mr. Legier before anybody signed it, and further corroborated Mr. Legier that he was not in a hurry to leave because he was also accustomed to leaving on the 4:30 p. m. train to go to Mandeville, and that there was no train leaving the city for Mandeville at 11 o'clock in the morning.

It must be borne in mind that the passing of the act of sale of the property took place on July 8, 1921. The trial of the case on the merits was held April 23, 1929, or very nearly eight years after the sale was passed. The memory of the plaintiff and his wife, on all matters except the fact that only 70 feet was to be conveyed and not 74 feet and that the act of sale was not read, is faulty. They were certain that Mr. Castaing signed the act of July 8, 1921, but the original act shows this was not so.

When Mr. Crais was on the stand, he was shown his signature to the affidavit which was annexed to the original petition, and, when asked if it was not his signature, he testified as follows:

"Q. I show you the signature to this affidavit, William C. Crais. You signed it?
"A. Yes, but I never seen this before.
"Q. You now state you never saw this before?
"A. Yes, I don't know what it is for. I don't know anything about it."

The sole question before the court is one of fact. The testimony is conflicting. The burden of proving the case by a preponderance of the evidence was on the plaintiffs, and we have reached the conclusion that they have not successfully borne it.

For the reasons assigned, the judgment is affirmed.