**60 So.2d 310**

**POOR v. HEMENWAY et al.**

**No. 40509.**

June 2, 1952.

Rehearing Denied July 3, 1952.

Bloch, McCloskey & Dennery, New Orleans, and Simon Herold, Shreveport, for plaintiff-appellant.

Smith, Hunter, Risinger & Shuey, Shreveport, for defendants-appellees.

HAWTHORNE, Justice.

This is a redhibitory action in which plaintiff-appellant is seeking the rescission of the sale to her on June 1, 1949, of the 25-year-old sailing yacht, with auxiliary motor, Windjammer. She prays for the return of the purchase price in the sum of $13,500, together with certain expenses allegedly incurred for maintenance and preservation of the vessel, the cost of improving it and adding to its gear and equipment, as well as the alleged expenditures by her in connection with the commercial purposes for which the vessel was purchased, itemized in her brief to be the sum

of $14,506.99, a total of $28,006.99. In the alternative she prays for a reduction in the purchase price. From the judgment in favor of defendants-appellees, Frank S. Hemenway and Paul L. Hemenway, dismissing her suit, she has appealed to this court.

Plaintiff-appellant, a newspaper reporter and journalist, intended to make a deepwater cruise on the yacht, during which she expected to gather photographs and material for the writing of articles and a book covering her travel experiences. According to the plaintiff, she began soon after her purchase of the vessel to equip it for such a voyage, added to its gear and equipment, and for this purpose, spent $3,140.72, the principal items of which were a new set of sails and a radio direction finder.

In the month of July, 1949, plaintiff sailed for Baltimore and possibly for New York, planning a cruise along the Gulf Coast by way of Miami, Florida, and on up the Atlantic Coast. During this voyage some leakage in the vessel was experienced, and difficulty was had with the operation of the motor. For these reasons, it was necessary to make port at St. Petersburg, Florida. Upon the vessel's being inspected at this port, there was discovered a condition of rot in the vessel's kingplank and also a condition of rot in the vicinity of the forward mast and at the edge of the cabin trunk. At this time plaintiff was informed by the proprietor of a shipbuilding company there that continued use of the vessel in its existing condition would be dangerous.

About this time defendants were notified of the condition of the vessel and of plaintiff's willingness to return it to the Mississippi Gulf Coast for inspection by them. Thereafter the vessel was returned to Biloxi, Mississippi, and, although requested to do so, defendants did not avail themselves of the opportunity to inspect it, taking the position that the sale had been made on an "as is—where is" basis.

Plaintiff thereafter caused the vessel to be removed to Scholtes Marine and Machine Works at Pascagoula, Mississippi, where she was pulled up on the ways, the paint scraped off her hull, and the planking removed, revealing evidence of rot, erosion, and deterioration in her hull and frame. Scholtes was then instructed by plaintiff to remove and replace the defective portions of the boat, and by the time the case was tried in the lower court the bulwarks, the covering board on the starboard side, the sheer plank, part of the frame section, the stem, and about one-fourth of the planking had been removed from the vessel.

The evidence establishes beyond any doubt that, because of the condition of rot found in the hull of this vessel and in a part of her framework and in other places, she was completely unseaworthy and unsafe even for coastwise sailing, and that this condition existed at the time of the sale. In the opinion of the experts, due to the rot

and the deterioration of the fastenings, the seams were likely to open and the vessel to leak and possibly sink. The vessel therefore was entirely unsuited for the purpose for which it was sold or the purpose for which it was intended.

We are convinced that the rotten condition which existed in the hull and other parts of this boat was not apparent and could not have been discovered by a simple inspection. It was necessary to remove and scrape the paint from the hull and strip the vessel to find it. We have concluded, furthermore, that the defendants made the sale in good faith and without any knowledge of the rotted condition which existed in the vessel, for plaintiff has failed utterly to establish any such knowledge on their part.

Plaintiff, upon ascertaining the condition of the vessel, sought to return it by tendering it to defendants, but they refused to accept it. She thereafter instructed Scholtes to remove and replace the defective portions of the vessel, and this work was being done at the time of the trial. According to the testimony of one of the experts called by plaintiff, when the work is completed, the vessel will be as good and as seaworthy as if new. According to another expert called by plaintiff, the vessel will be 75 per cent new as to the hull.

As stated above, at the time of the trial a part of the framework, the bulwarks, the sheer plank, and other portions of the vessel had been removed and work was then being done toward removing the planking from the hull. Since the plaintiff undertook to tear the vessel apart and rebuild it, it could not be restored to the vendors in substantially the same condition as when sold, and under these circumstances she is not entitled to a rescission of the sale. As pointed out by the trial judge in his written reasons for judgment, the jurisprudence is well settled that the purchaser must be able to restore the vendor to the position he was in at the time of the sale in order to be entitled to rescission. Rouzel v. M'Farland, 8 Mart.. O.S., 704; Henderson v. Leona Rice Milling Co., 160 La. 597, 107 So. 459; Pere v. Dalgarn, 3 La.App. 775; Goode-Cage Drug Co. v. Ives, 16 La.App. 383, 133 So. 813.

In the instant case the record is clear that at the time of the trial the vessel was being dismantled according to plaintiff's instructions and that the work ordered to be done to the vessel when completed would cost between $6,000 and $8,000, and the record does not reveal how much of this had been paid.

Under our conclusion that the plaintiff is not entitled to a rescission of the sale and the return of the purchase price, she is not entitled to recover the expense that she alleges to be due for the maintenance and preservation of the vessel, the cost of improving it, and adding to its gear and equipment. Moreover, since the vendors were in good faith and did not know of the

vices and defects existing in the vessel at the time of the sale, she is not entitled to recover the amount alleged to have been expended by her in connection with the commercial purposes for which the vessel was bought.

■ The plaintiff is entitled, however, under her alternative demand, to a reduction in the purchase price, since we have found that the vessel was unseaworthy at the time of the sale. Under this alternative demand, she prays for a reduction in the purchase price of $10,000, and contends in brief that at the very least she should be awarded $6,000. According to her she should recover the cost of all the work that she has authorized.

■ An estimate made by the plaintiff's expert shows that the work being done on the vessel would cost when complete in excess of $6,000. However, at the trial he testified that, since making this estimate, the dismantling of the vessel had revealed that the work would cost roughly $8,000.

In our opinion the $6,000 estimate for the repairs and improvements authorized by plaintiff before the vessel was torn apart or dismantled is conservative. We think that the later estimate of $8,000 for putting Windjammer back into a sound condition is perhaps too high although neither of these estimates was questioned or disputed by the defendants. Under these circumstances we have decided to resolve the matter by fixing $7,000 as a fair estimate of the cost of the work.

According to plaintiff's experts the work that she has authorized when completed would cause the vessel to be as good and as seaworthy as if new, and the hull would be 75 per cent as good as new. At the time of the purchase the vessel was 25 years old, a fact well known to the plaintiff herself since she had sailed on it during her childhood. The cost of building the vessel new at the time of her purchase would exceed many times the price of $13,500 which she paid. We do not think that the Code contemplates that the diminution in price in the sale of an old article found to be more deteriorated than could be reasonably expected, and to such an extent that it is unfit for the purpose for which it was intended, would be equal to the cost of restoring the article so that it is as good, or practically as good, as new. Under the facts, therefore, she is not entitled to recover the entire estimated cost of the work, but we think that an award of $5,000 in her favor will do justice between the parties to this litigation. She prayed for a reservation of her rights to recover any additional sum that might be subsequently shown to be necessary for further repairs. Under our view of the case such a reservation is unnecessary.

■ Defendants-appellees take the position that the vessel was sold to the plaintiff herein on an "as is—where is" basis and that this stipulation by error and inadvertence was omitted from the written bill of sale, and accordingly they pray that

the bill of sale be reformed so as to evidence this stipulation. The law is well settled that the burden is on the one seeking the reformation of a written contract to prove the error, and he must carry the burden by clear, and the strongest possible, proof. See Rodgers v. S. H. Bolinger Co., Ltd., 149 La. 545, 89 So. 688; Reynaud v. Bullock, 195 La. 86, 196 So. 29; Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65; White v. Myane, 10 La.App. 195, 120 So. 650; Crais v. Castaing, 13 La. App. 395, 128 So. 300. In the instant case the bill of sale contains no limitation of warranty whatsoever, and, after reading the record, we do not think that defendants' proof is sufficient to establish error so as to entitle them to the reformation they have sought.

For the reasons assigned, the judgment of the lower court in favor of defendants-appellees, Frank S. Hemenway and Paul L. Hemenway, dismissing plaintiff's suit is reversed, and it is now ordered that there be judgment in favor of plaintiff, Peggy Poor, and against the defendants in the sum of $5,000 with legal interest from June 1, 1949, until paid; defendants-appellees to pay all costs.

HAMITER, J., concurs in part and dissents in part.

McCALEB, J., concurs in the decree.

HAMITER, Justice (concurring in part and dissenting in part).

With the majority I agree that plaintiff is not entitled to recover under her main demand which is for a recission of the sale and for the payment to her of the purchase price and other sums allegedly expended, all aggregating $28,006.99.

Further, I agree that under the alternative demand for a reduction of the purchase price plaintiff should be awarded whatever amount is necessary to place the "Windjammer" in a seaworthy condition as a 25-year-old sailing yacht (which she was when sold), not as a new one.

But I am not sure that the sum of $5,000, for which the majority ordered judgment in plaintiff's favor, is the proper amount to be awarded. The evidence before us, as I appreciate it, does not disclose with any degree of certainty the cost of rendering seaworthy, as such, the 25-year-old vessel. The required cost, for all the present record discloses, could be much more or much less than the $5,000 awarded.

I am of the opinion, therefore, that the case should be remanded to the district court for the purpose of receiving evidence appropriate and sufficient for definitely determining this question of quantum.