173 So.2d 365 (1964)
Martin J. CAMPO, Jr.
v.
Dr. and Mrs. Joseph A. LaNASA.
No. 1651.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1964.
On Rehearing April 5, 1965.
*367 Weldon A. Cousins, New Orleans, for plaintiff-appellee.
August J. LaNasa, Gerald P. Fedoroff, New Orleans, for appellants-defendants, Dr. and Mrs. Joseph A. LaNasa.
Robert U. Blum and Charles F. Seemann, New Orleans, for third-party defendant, Latter and Blum, Inc.
Before McBRIDE, REGAN and BARNETTE, JJ.
McBRIDE, Judge.
On August 12, 1958, Dr. and Mrs. Joseph LaNasa, the owners, leased in writing to Mr. and Mrs. Martin J. Campo, Jr., a ground-floor store in the premises 4226 Chef Menteur Highway, known as "Lela Building" for a term of five years commencing October 1, 1958, and terminating September 30, 1963, in consideration of a monthly rental of $275.00 per month for the first two years and $325.00 per month for the next three years. The premises were to be used as a beauty parlor.
The lease is on a printed from containing among its other stipulations the following:
"The Lessor shall install and efficiently operate during a Twelve (12) hour period from 8:00 A.M. to 8:00 P.M. daily except Sundays during the heating season an air conditioning system that will be efficient in operation. The Lessor shall also install and efficiently operate a heating system during the cooling season that will be efficient in operation."
* * * * * *
"The Lessor shall provide adequate janitor service for the premises herein leased at no additional cost to the Lessee."
The following words appear in typewriting at the end of the lease:
"LESSEE AT ITS EXPENSE TO DO THE FOLLOWING:
* * * * * *
"2. Install air-conditioning equipment."
There is specific provision in the lease that wherever a conflict exists between the printed clauses and the specially written or typewritten clauses, the latter shall control. The effect of which is that the typewritten provisions modified the printed stipulations to the extent of relieving the lessors of responsibility for installing the air conditioning system. However, the obligation of the lessors to "effectively operate" such system which the lessee *368 bound himself to install was unchanged and remained in force.
The lessee placed on deposit with the lessor "as additional security for this lease," the sum of $825.00. Regarding this deposit the lease provides:
"* * * This deposit shall be forfeited to Lessor without formality should the Lessee fail to comply with any of the terms or conditions of this lease. Forfeiture of the additional security deposit shall not minimize or affect in any way any of the other rights, privileges and securities guaranteed the Lessor under any of the clauses, terms and conditions contained in this lease."
Campo moved from the premises in January, 1963, after an occupancy thereof for more than four years.
During the tenure of his occupancy, Campo installed the contemplated air conditioning system and paid all electrical and gas utility bills for the operation thereof. He claims that after having been in the premises for about six months he discovered, upon reading the lease, that such bills should have been paid by the lessors; he also concluded that the landlord should have furnished him janitorial services. He thereupon employed an attorney who wrote Dr. LaNasa on August 17 and again on October 2, 1959, regarding the matter of the lessors' responsibility for said costs and services demanded an adjustment. Dr. LaNasa ignored the attorney's letters.
On May 1, 1962, Campo sent his check to Dr. LaNasa for rent for the month of May after having deducted from the amount of rent charges for electrical bills for operating the air conditioning system for the previous month, but Dr. LaNasa returned the check the next day stating in an accompanying letter that the amount "does not represent the advance rent payment for the month of May." Campo was notified that if he did not pay the full amount of rent by May 18, Dr. LaNasa would declare the rent for the whole unexpired term of the lease due and exigible. Because of Dr. LaNasa's threat, Campo remitted under protest each month thereafter the full amount of rent stipulated for in the lease. Dr. LaNasa admits Campo had also made a personal complaint regarding the lessors' non-payment of the utility bills and the failure to furnish janitorial services and that he advised Campo: "* * * if he thought he had a case to go to court and let the courts decide that."
Prior to vacating the premises, Campo had filed this suit (on October 4, 1962) against Dr. and Mrs. LaNasa praying for a rescission of the lease on the ground that defendants failed to comply with their obligations thereunder with respect to paying the utility bills in question and to furnishing adequate janitorial services for the premises; plaintiff also sought judgment for $2,286.76 for reimbursement of the aggregate of the utility bills which it is alleged should have been paid by the landlord, and also for the return of the $825.00 deposited as "additional security" for the lease. By supplemental and amended answers, defendants allege that the utility bills and the janitorial services were to be borne by the lessee according to the true intent of the parties, but the written lease, through a mutual mistake, failed to so provide. Defendants deny any liability to plaintiff. In a reconventional demand, they pray that the lease be reformed so as to express the true intent of the parties; that they have judgment against Campo for $2,925.00, the rent due for the whole unexpired term of the lease, plus attorney's fees. In a third-party demand asserted against Latter and Blum, Inc., their real estate agent, defendants pray that, in the event Campo recovers judgment against them, they in turn have like judgment against Latter and Blum, Inc., for the reason that said agent incorrectly prepared the lease.
*369 After a trial in the lower court, plaintiff's suit, as well as defendants' reconventional and third-party demands, were dismissed. Defendants petitioned for and were granted a devolutive appeal limited to that portion of the judgment dismissing the reconventional demand; plaintiff answered the appeal praying that he have judgment against Dr. and Mrs. LaNasa for $2,286.76, plus the return of the $825.00 deposit.
We shall first address ourselves to a consideration of the demand of Dr. and Mrs. LaNasa for reformation of the lease. The facts shown by the testimony are that Dr. LaNasa has a number of rental units, and Latter and Blum, Inc., is his rental agent. Dr. LaNasa prepared and had printed a supply of lease forms for use in the confection of his leases. These forms contain blank spaces which may be appropriately filled out to suit the details of each lease. The printed paragraphs above alluded to appear in the forms. Campo had no negotiations whatever with Dr. LaNasa. While the Lela Building was in the course of construction, there were negotiations between Campo and Dr. LaNasa's son Jerry, who has a connection with Latter and Blum, Inc., which Dr. LaNasa describes as "liaison officer." Campo's final negotiations were with either or both Jerry LaNasa or M. E. Polson, vice president of Latter and Blum, Inc. In due course, Polson drew up the instant lease between the LaNasas and Campo and submitted the same to the lessors for their signatures. Dr. and Mrs. LaNasa signed the document without taking the time to read its contents. Dr. LaNasa states he is cognizant of all provisions contained in his printed leases, and that he did not deem it necessary to ascertain the correctness of the lease as prepared. After Dr. and Mrs. LaNasa signed, the lease was returned to Latter and Blum, Inc., and Campo was called to its office for the purpose of obtaining his signature. Campo testified he did not read the lease but that Polson read "a certain amount" to him whereupon he signed. It was testified to by Dr. LaNasa that Latter and Blum, Inc., had specific instructions from him not to permit to remain in any leases made on any downstairs stores the stipulations that the lessor would "operate" the air conditioning or hearing systems or furnish janitorial services. He states Latter and Blum, Inc., disregarded those instructions in Campo's lease. Jerry LaNasa did not testify, and Polson, although appearing as a witness, gave no testimony as to the preliminary agreements arrived at with Campo, and we are at a loss to know what was said by or between the agent and Campo. Dr. LaNasa vehemently contends the lease should be reformed so as to stipulate that Campo is responsible for the utility charges and also is to furnish his own janitor.
When parties reduce their contracts to writing and the writing exhibits no uncertainty or ambiguity as to the nature, the object, and the extent of the agreement, it is presumed that the writing expresses the true and complete undertaking of the parties. Equity may reform even unambiguous contracts on their face upon a showing that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to warrant relief, there must be clear proof of the antecedent contract and of the error in committing it to writing. Agurs v. Holt, 232 La. 1026, 95 So.2d 644; Poor v. Hemenway, 221 La. 770, 60 So.2d 310; Krauss v. Fry, 209 La. 250, 24 So.2d 464; Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65; Rodgers v. S. H. Bolinger Co., 149 La. 545, 89 So. 688, 690; Campbell v. Thomas, La.App., 140 So.2d 163. Courts should exercise great caution and require a high degree of proof. Poor v. Hemenway, supra; Mire v. Miller, La.App., 140 So.2d 767; Texas Co. v. Rosenthal-Brown Fur Co., D.C., 12 F.2d 297, Aff. 5 Cir., 16 F.2d 1022, Cert. Den., 274 U.S. 746, 47 S. Ct. 658, 71 L.Ed. 1327.
Dr. LaNasa has proven nothing save the instructions he says Latter and *370 Blum, Inc., disobeyed. Jerry LaNasa and Polson were cognizant of the nature and details of the antecedent agreement, and in the absence of any evidence emanating from them that there was error, our conclusion must be that the contract was drawn in accordance with the understanding between the agent and Campo; moreover, if there was error in the manner in which the lease was confected, Dr. LaNasa had full and ample opportunity to discover and rectify the same, but he deemed it unnecessary to read the document. He must shoulder the blame.
On behalf of appellant, it is argued that Campo's own testimony shows that the disputed stipulations were permitted to remain in the lease in error, and they did not conform to any prior agreement. It is pointed out to us that Campo testified that the matter of the utility bills and the janitorial services never "came up between us who was going to pay for the electricity or that, but the bills was coming and charged to my place and I paid them."
We do not think Campo's testimony makes proof of error requiring reformation. The questioned stipulations were embodied in the printed lease forms by Dr. LaNasa himself, and if they were to be inoperative in the Campo lease, this fact should have been proven by those who represented the LaNasas anent the agreement with Campo.
The lease provides that should the lessee at any time violate any of its conditions, the lessor has the option of cancelling the agreement. LSA-C.C. art. 2729 provides that the neglect of the lessor to fulfill his engagement may also give cause for a dissolution of the lease.
From the evidence, it is clear Campo did all possible to have the LaNasas live up to their bargain, but without avail. Dr. LaNasa knew that under the verbiage of the written lease it was the lessors' obligation to "efficiently operate" the air conditioning and heating equipment, which could only mean he was to be responsible for the utility bills for gas and electricity. He also knew under the lease as it is written, lessors were bound to furnish janitor service. Notwithstanding this, Dr. LaNasa without right assumed an arbitrary stand in the matter and insisted on Campo's punctual and meticulous compliance with the lease on his terms. Agreements legally entered into have the effect of laws on those who formed them, and they cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. LSA-C.C. art. 1901. We think in view of Dr. LaNasa's steadfast refusal to pay the utility charges and to furnish the services called for by the lease despite the putting in default by Campo is such breach of the lease as to furnish ground for a rescission thereof under the above mentioned codal article.
We, likewise, think Campo is entitled to recover from the LaNasas the return of the $825.00 "additional security" posted by him with the lessors and to be reimbursed the sum he was forced to expend for electrical and gas bills and janitorial services during the time he occupied the premises. The janitorial services amounted to $1,149.00; utility charges aggregated $1,138.76.
The LaNasas claim in their reconventional demand rent for the unexpired term, and in view of our holding that the lease is rescinded, it follows no such recovery may be had by the reconvenors; however, Campo did remain in the premises for part of the month of January, 1963, and the record indicates he did not pay rent for said month, so the defendants would be entitled to a judgment in reconvention for said month's rent, amounting to $325.00, plus ten percent attorney's fees.
The third-party demand against Latter and Blum, Inc., is not before the Court for the simple reason defendants' appeal, a limited one, was taken only from that part of the judgment rejecting their *371 reconventional demand; hence, we cannot review the lower court's dismissal of the third-party pleading.
The judgment appealed from is reversed insofar as it dismissed Campo's suit against the defendants, and it is ordered, adjudged and decreed that the judgment be amended so as to provide that plaintiff have judgment against the defendants cancelling and rescinding the lease, and further for the full sum of $3,112.76 with legal interest from judicial demand until paid.
The judgment appealed from is also reversed insofar as it dismisses the reconventional demand of defendants, and it is further ordered, adjudged and decreed that the judgment be amended so as to provide that defendants have judgment in reconvention against plaintiff for the sum of $325.00 with legal interest from judicial demand until paid, plus ten percent attorney's fees; this judgment on the reconventional demand is to be applied as an offset pro tanto against the judgment in favor of plaintiff and against defendants on the main demand; the reconventional demand is otherwise dismissed.
The judgment appealed from is also reversed insofar as it casts each party for his own costs, and it is further ordered, adjudged and degreed that the judgment be amended so as to provide that all costs below are to be paid by defendants.
And as thus amended and in all other respects the judgment appealed from is affirmed. Appellants are to pay the costs of this appeal.
Reversed in part, amended and affirmed.

ON REHEARING
Before McBRIDE, REGAN, YARRUT, HALL and BARNETTE, JJ.

On Rehearing.
YARRUT, Judge.
This rehearing was limited to two questions: (1) whether Latter & Blum, third-party Defendant, is properly before the court on appeal; and (2) whether Plaintiff adequately proved the amount he paid for electricity for operating the airconditioning unit.
As our original opinion completely discussed all facts and issues involved, we need consider only the specific facts that relate to the two limited issues.
With reference to whether or not third-party Defendant (Latter & Blum) is before this court on appeal, the appeal taken by Defendants, as third-party Plaintiffs, was only from that part of the judgment which dismissed their reconventional demand against Plaintiff. The district judge rendered one judgment in which he dismissed Plaintiff's main demand, Defendants' reconventional demand, and Defendants' third-party action against Latter & Blum, Inc.
No appeal was taken by Defendants from that part of the judgment which dismissed their third-party action against Latter & Blum. Defendants contend that, when Plaintiff answered their appeal, Latter & Blum (as their third-party Defendant) was thereby made a party on appeal, citing Emmons v. Agricultural Insurance Co., 245 La. 411, 158 So.2d 594. The Emmons case involved a tort action against two insurers and one insured. Judgment was rendered for plaintiff against only one insurer and its insured, who alone appealed both from the judgment against them and from the judgment in favor of their codefendant insurer, against whom neither had filed a third-party demand. The court held that defendants could appeal from the judgment dismissing their codefendant in spite of the fact they had not instituted a third-party demand against it. In the cited case, the appellants specifically appealed from that part of the judgment which dismissed their codefendant. In the case at bar, appellants (Defendants) did not appeal from that part of the judgment which *372 dismissed their third-party Defendant, Latter & Blum.
Had the Defendants wished to appeal from the dismissal of their third-party demand against Latter & Blum they should also have appealed specifically or generally from all decrees of the judgment that were adverse to them to-wit, their reconventional demand and their third-party action against Latter & Blum. Having only appealed specifically from that part of the judgment dismissing their reconventional demand against Plaintiff, and not from the dismissal of their third-party action against Latter & Blum, Latter & Blum is not before this court on appeal. The answer by Plaintiff to the Defendants' appeal from the reconventional demand was not an appeal from the judgment dismissing their third-party action against Latter & Blum.
(2) Regarding the question of the proof of the utility bills, although Plaintiff and Defendants stipulated to the correctness of the utility bills for the period involved, there was no stipulation regarding the apportionment of the amount attributable to the electric current used by the airconditioning unit and the other electrical equipment used in Plaintiff's beauty parlor. As the method employed for determining the amount of the award for airconditioning was not shown in our original decision, it will be described here:
The regular beauty parlor electrical equipment of Plaintiff was operated year around, while the airconditioning unit was used only in the summertime. Because all electricity consumed by the beauty parlor electrical equipment and the airconditioning unit was measured by one meter, the four years involved were divided into two parts each, six months winter and six months summer. The monthly electric bills (for XXXX-XX-XX-XX) for the summer six months for all electrically-operated units, including the airconditioning unit, were totalled; then the monthly bills for the winter months, during which the airconditioner was not used, were totalled. Plaintiff contends the difference between the two is the cost of electricity consumed in operating the airconditioning unit for each six summer months. This method employed by Plaintiff is not speculative, but practical and sound, particularly since no contrary proof or method was offered by Defendant.
Uncontroverted evidence should be taken as true to establish a fact for which it is offered, absent a showing of falsity or unreliability. Istrouma Mercantile Co. v. Northern Assur. Co., 183 La. 855, 165 So. 11; Becker v. Hollywood Theatre, La. App., 155 So. 522; Ledner v. Caddo Transfer and Warehouse Co., 14 La.App. 366, 124 So. 712; see 32A C.J.S. Evidence § 1038.
When there is a right to recovery, but the damages cannot be exactly calculated, the court has reasonable discretion to fix the quantum as best it can based upon all the facts and circumstances of the case. Prejean v. Delaware-Louisiana Fur-Trapping Co., 13 F.2d 71, 73 (5th Cir.) and the cases cited hterein; Orleans Shoring Co. v. Murphy, La.App., 151 So.2d 529; 17 Tul. L.Rev. 658, 660-61. See also Brantley v. Tremont and Gulf Railway Co., 226 La. 176, 75 So.2d 236; Germann v. 557 Tire Co., 167 La. 578, 120 So. 13; Farthing v. Neely, La.App., 129 So.2d 224, 239; Sutherlin Sales Co. v. United Most Worshipful, Etc., La.App., 127 So.2d 253, 259; Harrison v. Petroleum Surveys, La.App., 80 So. 2d 153.
Since we can find no error in our original decree concerning the issues on which the rehearing was granted, our original decree is reinstated and made the final judgment of this court.
Original decree reinstated and made the final judgment of this court.