270 So.2d 127 (1972)
William G. BROUSSARD, Plaintiff-Appellant,
v.
H. D. O'BRYAN et al., and Vermilion Dairymen's Cooperative Association, Defendants-Appellees,
Modern Cleaners and Laundry, Inc., Third-Party Defendant-Appellant.
No. 3977.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1972.
Rehearing Denied December 20, 1972.
Writ Refused February 1, 1973.
*128 Smith & Stansbury by Frank Smith, Jr., Lafayette, for plaintiff-appellant-appellee.
Cooper & Sonnier by Gary E. Theall, Abbeville, Armentor & Wattigny by Minos H. Armentor, New Iberia, for defendants-appellees.
Before SAVOY, HOOD and MILLER, JJ.
HOOD, Judge.
William G. Broussard instituted this suit against the heirs of the estate of Ella V. O'Brien (herein referred to as the "O'Bryans") and Vermilion Dairymen's Cooperative Association, for judgment rescinding the sale of eight shares of stock in W.W.N., Inc., from the O'Bryans to Vermilion. The stock purportedly transferred by that sale was owned by plaintiff, and had been pledged to the O'Bryans as security for the payment of rentals due under two lease contracts executed by the O'Bryans, as lessors, affecting property in Vermilion Parish. Broussard was the lessee in one of the leases, and Modern Cleaners and Laundry, Inc., was lessee in the other.
The O'Bryans answered, admitting the sale of the stock, but denying that the transfer was invalid. They also filed a reconventional demand and a third party petition seeking judgment against Broussard and Modern Cleaners for the sum of $4,000.00 alleged to be due as rent under the lease from the O'Bryans to Modern Cleaners.
Judgment was rendered by the trial court annulling the sale from the O'Bryans to Vermilion of eight shares of stock in W.W.N., Inc.; ordering that said shares of stock be returned to the O'Bryans, to be held by them in pledge as the collateral security originally contemplated by the parties; and condemning Broussard and Modern Cleaners to pay to the O'Bryans the sum of $4,000.00 as unpaid rent.
Broussard and Modern Cleaners have appealed from that part of the judgment of the trial court which condemns them to pay $4,000.00 to the O'Bryans. The O'Bryans and Vermilion have answered the appeal, praying that the judgment of the trial court be reversed insofar as it decrees the sale of the shares of stock in W. W.N., Inc., to be void.
This case was consolidated for trial with a related suit instituted by Vermilion Dairymen's Cooperative Association against W.W.N., Inc. In that action Vermilion sought to mandamus the defendant corporation to transfer to it the above mentioned eight shares of stock. No appeal was taken in that suit, however, and we *129 are rendering judgment on this date remanding the case to the district court. See Vermilion Dairymen's Cooperative Association v. W.W.N., Inc., La.App., 270 So.2d 134.
A number of issues are presented in the instant suit. One of them is whether third party defendant, Modern Cleaners and Laundry, Inc., defaulted in the payment of rent due under a lease contract between it and the O'Bryans.
On January 8, 1964, the O'Bryans leased to Broussard and Earl W. Allain a building in Abbeville for a term of five years, at a rental of $175.00 per month. The lease contained an acceleration clause which provided that all rentals due under the contract would mature in the event there was a default in the payment of rent. In order to secure the rental payments due under the lease, Broussard pledged to the O'Bryans eight shares of stock in W.W.N., Inc., a corporation which then was engaged in the distribution of milk processed by Vermilion Dairymen's Cooperative Association.
Broussard was the principal stockholder in W.W.N., Inc. The eight shares of stock which he pledged to the O'Bryans represented 80 percent of all of the authorized and issued stock of that corporation. Broussard also was the principal stockholder in another corporation known as Modern Cleaners and Laundry, Inc., and the premises affected by the above mentioned lease were used by Modern Cleaners for the operation of a cleaning and laundry business.
In 1965, the O'Bryans constructed another building adjacent to the one which they previously had leased to Broussard. On October 29, 1965, they leased that newly constructed building to Modern Cleaners and Laundry, Inc., for a term of five years, at a rental of $100.00 per month. This lease did not contain an acceleration clause, as did the first lease, and it provided that the leased premises could not be sub-leased without the approval of the lessors. Broussard signed the lease solely in his capacity as president of Modern Cleaners, the lessee. Although the property was leased only to Modern Cleaners and Laundry, Inc., and not to plaintiff individually, Broussard pledged the same eight shares of stock in W.W.N., Inc., which had been pledged to the O'Bryans in connection with the first lease, to secure the payments due by Modern Cleaners under the last mentioned lease.
Modern Cleaners made rental payments of $275.00 per month to the O'Bryans from the time the last: mentioned lease was executed until the monthly rental due on June 1, 1967, became payable. These payments of $275.00 per month were intended to cover the rentals due on both leases. The monthly rental payment which became due on June 1, 1967, was not paid on that date. On June 9, Modern Cleaners issued a check, made payable to the O'Bryans, for the sum of $175.00. That check was cashed by the O'Bryans on June 21, but on the back of the check the payees wrote, "In payment of lease dated Jan. 8th, 1964, for month of June, 1967."
On June 30, 1967, Modern Cleaners made a payment of $175.00 to the O'Bryans by money order. Other payments, each aggregating $175.00, were made with money orders by Modern Cleaners on August 3 and on September 5, 1967. In making these payments Modern Cleaners did not designate the lease to which the payments were to be applied, but the record shows that all of said payments were applied toward the payment of the rent due on the first lease, amounting to $175.00 per month. No other payments were made on the leases thereafter by either Broussard or Modern Cleaners.
On June 28, the O'Bryans, through their attorney, wrote to Vermilion Dairymen's Co-op advising that Modern Cleaners had defaulted in the payment of the rent due June 1, 1967, under the second lease, that is, the lease executed on October 29, 1965, providing for rentals of $100.00 per month, *130 and that the O'Bryans were in the process of exercising their right to transfer the eight shares of stock in W.W.N., Inc., which had been pledged to secure the payment of rentals. On July 6, 1967, the Board of Directors of Vermilion Dairymen's met and authorized that corporation to purchase the eight shares of stock from the O'Bryans. On the following day, July 7, the O'Bryans endorsed the stock certificate purporting to convey the eight shares of stock in W.W.N., Inc., to Vermilion Dairymen's Cooperative Association. Vermilion issued its check on July 13, 1967, for the sum of $4,000.00, made payable to the O'Bryans, representing payment of the amount agreed upon by the O'Bryans and Vermilion as the purchase price of the shares of stock.
Plaintiff Broussard received no notice of the proposed sale of the shares of stock in W.W.N., Inc. The first information he obtained about the sale was on August 8, 1967, at least a month after the stock certificate had been endorsed, when a letter was written to him by counsel for Vermilion advising that the O'Bryans had sold the stock.
Broussard testified that he became ill in May, 1967, and that during that month his wife entered into an oral agreement with the O'Bryans, under the terms of which the rent due on both leases was to be reduced to the aggregate sum of $175.00 per month. He takes the position that the payment of $175.00 made by Modern Cleaners on June 9, 1967, represented the full month's rent due under both leases for the month of June. Mrs. Broussard testified that in May, 1967, she entered into an oral agreement with one of the O'Bryan heirs that the O'Bryans would accept payments of $175.00 per month as the full amount due on both leases until Mrs. Broussard could obtain some money from her savings account. She stated that she obtained funds from her savings account on August 17 or 18, but that the lessees made no further payments on the lease after that date because she and her husband had learned by that time that the stock had been sold. The O'Bryans deny that they ever entered into an agreement with anyone to reduce the amount of the monthly payments which were due under the leases.
The property covered by the first lease, the one dated January 8, 1964, was subleased to Joseph Clarence Cart on October 1, 1967, with the written approval of the O'Bryans. All parties apparently agree that the rental payments due under the first lease have been paid. Plaintiff and Modern Cleaners contend that the payments due on the second lease also were paid up to date when the pledged stock was sold. The O'Bryans contend that the payment due on June 1, 1967, on the second lease had not been paid and that the lessee thus was in default when the stock was conveyed to Vermilion.
This suit was filed on February 1, 1968. After trial, the trial judge found that Broussard had failed to show that an agreement had been entered into reducing the rental payments due on both leases from $275.00 to $175.00 per month. He concluded that the lessee defaulted in the payment of the rent due under the second lease on June 1, 1967, and that the O'Bryans were entitled to recover from Broussard and Modern Cleaners the total amount of unpaid rent due under that lease after the above mentioned date.
We agree that the evidence fails to show a subsequent agreement to reduce the rental payments due on both leases from $275.00 to the aggregate sum of $175.00 per month, and that the lessee thus defaulted in the payment of the rent due under the second lease on June 1, 1967.
The next question presented is whether lessors, the O'Bryans, had the right to sell the shares of stock which had been pledged by Broussard as security for the payment of the monthly rentals due under the second lease, and thus whether the sale which was made to Vermilion on July 7, 1967, is valid.
*131 The Louisiana Civil Code authorizes the pledge of stock for the payment of a debt or obligation, and it provides that the pledgor may authorize the sale or other disposition of the stock pledged in such a manner as may be agreed upon by the parties without the intervention of courts of justice. LSA-C.C. art. 3165.
Our jurisprudence is settled that in the absence of an express waiver of the right to notice the pledgor is entitled, after demand for and default in payment, to reasonable notice of the intention of the pledgee to sell the pledged property. The pledgor is presumed to have waived nothing except what is specifically waived. Smith v. Shippers' Oil Company, 120 La. 640, 45 So. 533 (1907); Elmer v. Elmer, 203 So.2d 391 (La.App. 4 Cir. 1967); 33 Tul.L.Rev. 59, 117.
The pertinent portion of the lease contract which authorizes the lessors, the O'Bryans, to transfer the eight shares of stock pledged to secure the monthly payments reads as follows:
"In the event of the default of the payment of rentals under this lease lessors are given the right to assign, transfer and deliver said . . . (eight). . . shares of capital stock of W. W.N., Inc., for such consideration and on such terms as they may see fit and to apply the proceeds thereof towards the payment for the balance due on the rentals for the unexpired term of this lease."
There is nothing in the lease which can be construed as a waiver by the pledgor, Broussard, of his right to reasonable notice of the intention of the pledgee to sell the pledged property after there has been a default in payment of the rent.
In the instant suit, Broussard did not expressly waive the right to notice. No notice of any kind was given to him, the pledgor, before the stock was sold by the pledgee. We conclude that the purported sale by the O'Bryans to Vermilion of eight shares of stock in W.W.N., Inc., is void because of the failure of the O'Bryans to give proper notice to Broussard of the plan to sell. The trial judge correctly rescinded that sale of stock. We think the trial judge also was correct in ordering that the shares of stock be returned to the O'Bryans to be held by them in pledge as collateral security for the payments due under the above mentioned leases.
The O'Bryans filed a reconventional demand on May 28, 1969, seeking judgment against Broussard and Modern Cleaners for $4,000.00, that being the amount of unpaid rent alleged to be due under the second lease from June 1, 1967, until the time that lease expired. The trial judge concluded that the lessors were entitled to recover the unpaid rent, and accordingly he rendered judgment in favor of the O'Bryans against Broussard and Modern Cleaners "for the total amount of unpaid rent from June 1, 1967, and for each subsequent month of unpaid rent at the rate of $100.00 per month, or a total of $4,000.00, together with legal interest from the date of judicial demand, being May 28, 1969."
Broussard contends that he is not liable for the unpaid rent due under the second lease, because he was not the lessee and he did not obligate himself individually to pay the rentals provided in that lease. He argues that the trial judge erred, therefore, in condemning him, as well as Modern Cleaners, to pay the remaining rental installments on the second lease.
The record shows that Broussard signed the second lease only as president of Modern Cleaners. He did not obligate himself personally for any of the payments provided in that contract. Since he acted solely in his disclosed capacity as president of, or as agent for, the corporation, we hold that he is not personally liable to the O'Bryans for the unpaid rental payments due under the lease. The trial judge thus erred in rendering judgment against *132 Broussard, individually, for the amounts due. See LSA-C.C. art. 3012; Glenn Advertising, Inc. v. Beckham, 206 So.2d 742 (La.App. 2 Cir. 1968); American Security Bank of Ville Platte v. Vidrine, 255 So.2d 140 (La.App. 3 Cir. 1971); A. Lorenze Co. v. Wilbert, 165 La. 247, 115 So. 475 (1928); Neiman-Marcus Company v. Viser, 140 So.2d 762 (La.App. 2 Cir. 1962); Perhach v. Bender, 147 So.2d 18 (La.App. 2 Cir. 1962).
Modern Cleaners contends that the O'Bryans breached the lease contract by their illegal attempt to sell the shares of stock which had been pledged to secure the payment of the monthly rentals. It is argued that because of this breach of contract, Modern Cleaners is relieved of any further obligations under the lease, and that the trial court erred in condemning it to pay any additional rentals at all to the O'Bryans. To support that argument, we have been referred to the cases of LaNasa v. Winkler, 144 So.2d 489 (La.App. 4 Cir. 1962), and Campo v. LaNasa, 173 So.2d 365 (La.App. 4 Cir. 1965).
In each of the cited cases, the lessor was denied recovery because he had breached a contractual obligation to the lessee which prevented the latter from the full use or enjoyment of the leased premises as contemplated by the lease contract. In the Winkler case, for instance, the lessor failed to furnish heating and air-conditioning as provided in the lease. In Campo, the lessor had refused to pay utility charges and to furnish janitorial services, as called for in the lease.
In order to justify the cancellation of a lease, the lessee must show that the lessor has failed or refused to comply with his obligations under the lease, and that the lessor's action has seriously disturbed him in his possession and in the full use and enjoyment of the leased premises. LSA-C.C. arts. 2692 and 2729; Reed v. Classified Parking System, 232 So.2d 103 (La.App. 2 Cir. 1970); Young v. Eddy, 86 So.2d 243 (La.App. 1 Cir. 1956); LaNasa v. Winkler, supra; LaCour v. Myer, 98 So.2d 308 (La.App. 1 Cir. 1957); Fontenot v. Benoit, 128 So.2d 815 (La.App. 3 Cir. 1961).
In the instant suit the O'Bryans did not disturb Modern Cleaners in its full use and peaceable possession of the leased premises. They breached no obligation in the lease which in any way related to the lessee's use of those premises. It is true that the O'Bryans wrongly attempted to sell eight shares of stock which had been pledged by Broussard to secure the payment of the rentals due under this lease, and that their action in doing so constituted a breach of their pledge contract with Broussard, the pledgor. The breach of that contract of pledge, however, did not affect the right of the lessee, Modern Cleaners, to possess or use the premises during the full term of the lease, and in the manner contemplated in the lease contract.
We conclude that the attempt of the O'Bryans to sell the stock which Broussard had pledged did not relieve the lessee, Modern Cleaners, of its obligation to make the rental payments required in the contract.
Modern Cleaners contends further that the O'Bryans breached the lease contract by arbitrarily refusing to permit it to sublease the premises and by preventing it from advertising for a sublessee. It asserts that sometime after June 1, 1967, Modern Cleaners was able to sublease the premises to United Credit Plan, but that the O'Bryans refused to approve the sublease. It takes the position that this action on the part of the O'Bryans was arbitrary, as shown by the fact that the O'Bryans thereafter constructed a new building adjacent to the leased premises and leased that new building to the prospective subtenant, United Credit Plan.
Modern Cleaners also contends that in an effort to obtain a subtenant, it placed a "For Rent" sign on the leased premises, and that the O'Bryans hindered them from *133 obtaining a subtenant by requiring that the sign be removed. It is argued that these acts on the part of the O'Bryans constitute a breach of the lease contract, relieving the lessee from any further obligation to pay rentals under that contract.
The evidence does not show that Modern Cleaners could have subleased the property to United Credit Plan. During or about the month April, 1968, Donald Breaux, manager of United Credit Plan, contacted one of the O'Bryan heirs relative to renting the subject property. O'Bryan promptly referred him to plaintiff Broussard. Breaux testified, however, that after inspecting the leased property he decided not to sublease it because of the condition of the building. He stated that there was "a hole in the wall," that "we would have needed complete revamping on the inside of the building," that "we needed central air-conditioning, and there was a lot of other electrical work and stuff," and "the cost to us would have been too much, really." He testified that the O'Bryans did nothing to prevent or discourage him from subleasing the building.
The evidence also shows that a "For Rent" sign was painted on an outside wall of the leased property by Broussard's daughter. The O'Bryans, through their attorney, instructed Broussard to remove that sign because it defaced the building, but they informed him that a proper for rent sign could be placed on the premises. Photographs introduced in evidence show that the sign painted on the side of the building did deface it, and we think the O'Bryans were justified in requiring Broussard to remove that sign. We find that the O'Bryans did not prevent Broussard or Modern Cleaners from advertising for a subtenant.
We conclude that the evidence fails to show that the O'Bryans breached the lease contract by refusing to permit Modern Cleaners to sublease it, or by preventing the latter from advertising for a subtenant.
We find no error in the judgment of the trial court condemning Modern Cleaners to pay to the O'Bryans the rental payments provided in the lease which have not been paid. In our opinion, however, the payments which became due after this suit was filed bear interest only from the date each such payment became due.
For the reasons assigned, the judgment appealed from in this suit is amended and recast to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that the purported sale by H. D. O'Bryan, et al, to Vermilion Dairymen's Cooperative Association of eight (8) shares of stock in W.W.N., Inc., being the stock in litigation here, is hereby set aside and annulled, and that plaintiff, William G. Broussard, is recognized as being the owner of said shares of stock.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the stock certificate evidencing the ownership of said eight (8) shares of stock in W.W.N., Inc., being the stock in litigation here, be returned to defendants, H. D. O'Bryan, et al, to be held by said defendants in pledge, as the collateral security originally contemplated by the parties.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be rendered herein in favor of third party plaintiffs, H. D. O'Bryan, et al, and against third party defendant, Modern Cleaners and Laundry, Inc., for the sum of $4,000.00, being the total amount of unpaid rent due on the lease contract at issue in this suit from June 1, 1967, until October 29, 1970, at the rate of $100.00 per month, with legal interest thereon as follows: (1) On all monthly payments which became due prior to date of judicial demand, May 28, 1969, from that date until paid; and (2) on each monthly rental payment which became due after date of judicial demand, *134 from the date each such payment became due until paid.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the reconventional demand of H. D. O'Bryan, et al, against William G. Broussard, for a money judgment for past due rentals is hereby rejected.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that one-half the costs incurred in this suit are to be borne by plaintiff, William G. Broussard, and third party defendant, Modern Cleaners and Laundry, Inc. The remaining costs are to be borne by defendants, H. D. O'Bryan, et al, and Vermilion Dairymen's Cooperative Association."
One-half the costs of this appeal are assessed to plaintiff, William G. Broussard, and third party defendant, Modern Cleaners and Laundry, Inc. The remaining costs of this appeal are assessed to defendants, H. D. O'Bryan, et al, and Vermilion Dairymen's Cooperative Association.
Amended and affirmed.