SCHOTT, Judge.
Plaintiff has appealed from a dismissal of his suit for damages based upon allegations that defendant breached a collateral pledge agreement between the parties.
In connection with a mortgage loan made by defendant to Mr. and Mrs. Errol J. Meadoux in January, 1972, plaintiff deposited $3,000 in a savings account with defendant and pledged this sum to secure the mortgage loan to Meadoux. The pledge agreement contained the following;
“ . . . It is hereby expressly agreed in consideration of the aforesaid matters that before this pledge is used to remedy any delinquency in the payment of said indebtedness, said association shall give the undersigned pledgor notice of such delinquency at the address stated above or any. other address supplied by the pledgor to the pledgee in writing by mail; and the depositing of such notice in the United States mail, postage prepaid, shall constitute service of such notice upon the undersigned pledgor. After such notice and within 30 days there *720 of, the' undersigned pledgor shall have the privilege (1) of paying the amount of such delinquency or (2) of taking an assignment of said note and mortgage, without recourse, for the unpaid balance thereof, including such advances and costs, upon payment of such amount. If within 30 days of such notice such delinquency is not remedied and such loan is not bought and transferred to the undersigned pledgor, then any officer of said Association is appointed áttorney-in-fact for the undersigned pledgor and is expressly authorized to execute a withdrawal request against said Savings Account in the name of the undersigned pledgor and to withdraw any or all of the funds in said Savings Account. . It is specifically agreed that at the option of the pledgee, it may exhaust the real estate security securing said indebtedness and retain this pledge to secure any deficiency and acting as above provided but without further notice, apply sold Savings Account toward the liquidation of any deficiency, provided 30 days’ notice is given of the foreclosure sale of the real estate security.”
By August of 1972 the loan account had become delinquent provoking a meeting in February, 1973, between plaintiff and defendant’s representative and Meadoux at which it was agreed that Meadoux would make two payments per month beginning in March, 1973, until the account was brought up to date. Defendants’ representative also agreed to notify plaintiff in the event Meadoux failed to comply with his agreement. On February 14, 1973, a letter was sent to plaintiff confirming this understanding, including a statement that “As requested, notification will be forwarded to you when delinquency occurs.”
The two payments were made in each of the months of March, April and May, 1973, but none thereafter with the result that the matter was referred by defendant to its attorney in October, 1973, for foreclosure on the mortgage and execution on the pledge agreement. On November 13, 1973, the foreclosure proceedings were filed and in January, 1974, defendant withdrew $3,000 from plaintiff’s savings account in execution of the pledge.
Plaintiff’s charge that defendant breached the pledge agreement is based upon defendant’s failure to notify him of the delinquencies in Meadoux’s account and failing to notify him that the mortgaged property would be seized and sold.
Plaintiff testified that he was never contacted by anyone at the defendant’s Savings and Loan Association from the time of the meeting in February, but he acknowledged that he spoke to defendant’s attorney in August or September of 1973, and he was told that the account “looked bad; that something would have to be done.” He stated that he first learned of the forfeiture of the pledge from his account when he went to defendant’s office in February, 1974, to have his interest posted to his pass book. He specifically denied that he received any letter from defendant notifying him that the account was delinquent.
James A. Smith, attorney for defendant, testified that upon his receipt of the account for foreclosure he mailed to plaintiff a letter on October 8, 1973, providing as follows:
“This is to notify you, in accordance with the Collateral Pledge Agreement executed on January 5, 1972, that the mortgage account of Mr. and Mrs. Errol J. Meadoux at United Federal Savings and Loan Association is seriously delinquent.
“Mr. & Mrs. Meadoux have been notified that unless the account is made current immediately foreclosure proceedings will be instituted.
“In accordance with terms of the “Pledge Agreement: you have 30 days to remedy the delinquent situation, as outlined in the agreement.
*721 “We have written and spoken to the Meadoux’s repeatedly about the situation, but to no avail. Perhaps your influence may have some effect.”
He also testified regarding the telephone conversation he had with plaintiff prior to writing the above letter, that he told plaintiff that unless action were taken to correct the delinquency foreclosure proceedings would be instituted.
In reasons for judgment the trial judge said the following:
“The Court has found that the notice of delinquency required by the pledged instrument was, in fact, mailed by Mr. Smith but was not delivered to Mr. Raymond. The pledge agreement specifically provides that mere deposit of the notice is sufficient. Delivery by necessary implication, is not essential.
Civil Code Art. 3165 provides, in part:
‘ . . . but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as. may be agreed upon by the parties without the intervention of courts of justice; . . . ’
“While Art. 3165 dispenses with judicial and other formalities in the forfeiture of a pledge, notice is nevertheless required unless it is waived. Broussard v. O’Bryan [La.App.], 270 So.2d 127, Elmer v. Elmer [La.App.], 203 So.2d 391. But where the pledge instrument is clear and unambiguous in its notice requirements, its terms are binding between the parties, and compliance therewith is all that is required.”
We agree with the foregoing to the effect that the law of pledge does not under the contract prevailing here require that the notice be received by plaintiff where the evidence shows that defendant complied with the letter of the agreement in mailing the notice to plaintiff. This letter served not only to notify plaintiff of Meadoux’s delinquency, but also to notify plaintiff of the foreclosure sale of the real estate security when defendant exercised its option to exhaust that security while retaining the pledge to secure any further deficiency.
Plaintiff relies upon Broadway v. All Star Insurance Co., 285 So.2d 536 (La.1974), Cuccia v. Allstate Ins. Co., 262 La. 545, 263 So.2d 884 (1972) and Skipper v. Federal Ins. Co., 238 La. 779, 116 So.2d 520 (1959) in support of his argument. These cases concern the adequacy of notice under LSA-R.S. 22:636 relative to the cancellation of insurance policies and are in-apposite.
Finally, plaintiff attempts to bring this case within the ambit of Elmer v. Elmer, 203 So.2d 391 (La.App. 4th Cir. 1967) in which this Court set aside the execution of a pledge and said the following:
“A mere literal compliance with the terms of the pledge is not in itself sufficient to render valid the sale and purchase by the pledgee of the subject of the pledge, since the pledgee occupies the fiduciary relation to the pledgor, being regarded as a trustee or agent of the pledgor and making the sale, owing the pledgor the duty of acting fairly and in good faith.”
The language of the cited case must be interpreted in the light of its facts which were wholly dissimilar from those of the instant case. Plaintiff contends that defendant undertook the duty to notify him of any delinquency which might occur in the loan account and that defendant’s failure to do so constituted a violation of a trust plaintiff had placed in defendant. He contends that the assurances given him in February at the meeting and in defendant’s letter were violated so that his position was much the same as that of the pledgor in the Elmer case.
*722 When defendant’s attorney told plaintiff that the account was delinquent in August or September of 1973 the commitment made in February was carried out by defendant. Furthermore, when the pledge agreement was complied with by defendant by mailing the letter of October 8 to'plaintiff, this also constituted a compliance with the February assurances made by defendant since there is no evidence to show that the original agreement’s method of notice was ever changed. The facts of this case do not show any breach of trust on defendant’s part as they did in the Elmer case.
Accordingly, the judgment appealed from is affirmed.
Affirmed.