CULPEPPER, Judge.
This is a suit for reformation of the description of land covered by a contract of lease. Plaintiff leased from defendant a location for a filling station and contends in its original petition that, through mutual error and mistake, the property as described in the lease does not include an additional 40-foot strip along the highway. By supplemental petition plaintiff specially pleads that defendant is estopped by his representations, relied upon by petitioner to its detriment, that the lease covered the 40-foot strip in question. After trial on the merits the district judge held for the plaintiff on the basis of said estoppel. Defendant appealed.
There is little dispute as to the facts. In the summer of 1958 defendant contacted Mr. W. J. McBurney, president of the plaintiff corporation, offering to lease to plaintiff a filling station location on a highway in Cameron Parish. Mr. McBurney sent his sales representative, Fred Randow, to investigate. Randow contacted defendant and they went out to examine the property. Along the highway and within the boundaries of the proposed filling station site, there was a barrow ditch, 40 feet in width, which was excavated when the highway was built. This ditch was a topic of discussion between Randow and defendant and it was agreed that defendant would bear the cost of filling the ditch, provided plaintiff would furnish the necessary culvert for drainage purposes.
Defendant did not inform Randow that actually he did not yet own the 40-foot barrow ditch which was located between the highway and property which was owned by the defendant. The facts show that defendant had, some two months previously, entered into an agreement to purchase this 40-foot strip but there was a delay because of the necessity of securing court approval for signature by the tutor of certain minors who owned an interest.
At the conclusion of their initial discussions, defendant handed to Mr. Randow a copy of a mortgage which described the property then owned by defendant, but did not cover the said 40-foot strip. Randow delivered this instrument to Mr. McBurney, who in turn used the description therein to prepare the lease in question. The property description in the lease reads as follows:
“Lots numbers One (1), Two (2) of the Bonsall Heirs Subdivision of Lot Number One (1) of the Bonsall Heirs Subdivision of the East Half (E 1/2) of the Thomas Bonsall Heirs property lying South (S) of the Cameron-Creole Highway in the Fractional Section Thirteen (13) in Township Fifteen (15) South, Range Nine (9) West, Louisiana Meridian, as per plat of survey of said subdivision recorded in Book One (1) of Plats at page 140, bearing file No. 54751, filed on October 1, 1948, records of Cameron Parish, Louisiana, lying South of the South line of the Forty (40') Foot Barrow Canal as shown on Sheet No. 193-01-08, bearing file No. 52360.”
Plaintiff did not have the property surveyed nor did it obtain a title examination. Randow took the lease to Cameron, where *888 lie went with defendant to the office of the clerk of court. The clerk read the lease to the parties and checked the description against the original purchase of the property by the defendant. The defendant then signed the lease and it was later signed by Mr. McBurney for the plaintiff corporation.
After the lease was signed, the 40-foot barrow ditch was filled and the gasoline station was constructed on the 40-foot strip in question. Defendant was present when the improvements were “staked out” and during their construction. After the station was completed, plaintiff and defendant entered into a verbal agreement whereby defendant operated the station.
By the end of about the first year of such operation, defendant had lost money and was unable to pay plaintiff for gasoline as it was delivered. In an effort to help defendant succeed with the station, it was agreed that plaintiff would build a mechanics shop and grease rack, and allow defendant to construct a cafe, all on the 40-foot strip in question. Also, plaintiff agreed to furnish defendant certain equipment and a stock of gasoline and oil. In consideration of this agreement, defendant gave plaintiff his promissory note payable at the rate of 1‡ per gallon on all gasoline to be sold from the station in the future. The written agreement to this effect, in letter form, signed by both parties, is the principal basis for the lower court’s holding that defendant is estopped to contend that the parties did not originally intend and agree that the 40-foot strip be covered by the lease.
After operating the station a few months longer, the defendant again was unable to pay for gasoline as it was delivered and a dispute arose. It was at this time that defendant first advised plaintiff of his “ace in the hole”, i. e., that the lease did not cover the 40-foot strip on which all of plaintiff’s improvements had been constructed. Plaintiff demanded of defendant a reformation of the description in the lease. Defendant refused. Defendant then vacated the premises, and plaintiff filed the instant proceedings.
In this court the defendant appellant’s first contention is that the reformation-of an instrument will not be granted where-the alleged error is due to the negligence of the complaining party in failing to read and understand the instrument. Defendant cites Fontenot v. Coreil, La.App., 2 So.2d 97 in which it is stated: “It will not do for a man to enter into a contract, and, when, called upon to respond to its obligations,, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.”'
In the present case Mr. McBurney and Mr. Randow admittedly read the description in the lease, yet it is obvious-that they did not understand the 40-foot barrow ditch to be excluded by the language at the end of the description stating “ * *' lying south of the south line of the 40-foot barrow canal * * ” We agree with the trial judge that this description is clear and unambiguous and if it had been carefully studied by McBurney or Randow, they should have realized that the lease did not cover the 40-foot ditch. However, we think the evidence shows that this error on their part was induced by the representations of' defendant that the lease covered the 40-foot ditch. In this type of situation, where the-error is caused by fraud or misrepresentation, the courts have held the victim is-entitled to reformation of the written, contract to conform to the actual agreement reached by the parties. Rodgers v. S. H. Bolinger Co., 149 La. 545, 89 So. 688; Weber v. H. G. Hill Stores, 210 La. 977, 29 So.2d 33; Gross v. Brooks, La.App., 130 So.2d 674; L.S.A.-C.C. Art. 1847; Price v. Taylor, La.App., 139 So.2d 230. Furthermore, as set forth subsequently in this opinion, we are of the opinion that defendant is now estopped to contend that plaintiff: was guilty of negligence in reading the contract.
*889 Defendant’s second contention is that he could not lease the 40-foot strip because he did not own or possess it at the time the lease was signed. The answer to this argument is that a lessor who can deliver possession of the premises to the lessee need not be the owner of the property. L.S.A.-C.C. Articles 2681 and 2682; Spence v. Lucas, 138 La. 763, 70 So. 796; Brian & Brian v. Shad, La.App., 186 So. 766. Here the defendant, though not the owner at the time the lease was signed, could and did deliver undisturbed possession of the 40-tfoot ditch to the lessee.
We think the trial judge was correct in deciding this case on the basis of estoppel. The estoppel here is of the type generally classified as “equitable estoppel or estoppel in pais” which is defined in 19 Am.Jur. 634 as a “situation where, because of something which he has done or omitted to do, the party is denied the right to plead or prove an otherwise important fact.” We think the evidence shows that when defendant first took Mr. Randow to the proposed filling ■station location, he indicated the property as including the 40-foot strip. Randow unquestionably thought that the property to be leased extended to the highway. The property would have been worthless for filling station purposes if it did not. It is true that the description of the property, ■set forth in the mortgage given by defendant to Randow, did not include the 40-foot strip, but it is obvious that defendant represented to Randow that this was the correct description of the filling station location which defendant had pointed out. Defendant remained silent as to the fact that he didn’t own the 40 feet. This conduct by defendant undoubtedly influenced Randow to fail to notice the deficiency in the description. Furthermore, the facts also show that defendant stood by and allowed plaintiff to •construct all of the buildings, pumps, tanks, etc, on the 40 feet in question. Finally, the most conclusive piece of evidence regarding estoppel is the letter agreement of December IS, 1959, entered into after defendant had been operating the station about a year and providing for the construction of the new mechanics shop, grease rack, etc. In this agreement it is stated as follows:
“We agreed to furnish and install the larger compresser and this equipment to be included with the original station installation. We agreed that we would allow you to share equally with us the frontage between the station building, the cafe and shop, if built, and the Cameron-Creole Highway for driveway purposes and parking next to the cafe and shop, if built.
“We agreed that in case you found it impossible to operate the service station at the above location, that we would continue to rent it until such time as we have received in rental the amount you may at that time owe Evangeline Refining Company, Inc.”
The above language is clearly an express acknowledgment and representation by defendant that the lease covered the 40-foot strip in question. Following defendant’s execution of this agreement on December 15, 1959, the mechanics shop and the wash and grease rack were built on the 40-foot strip in question by the plaintiff.
We agree with the trial judge that in view of all of these circumstances the defendant is now estopped to deny that the 40-foot strip is subject to the terms of the original lease. All of the elements essential to an estoppel in pais are present here. These essentials are set forth in the case of State ex rel. Porterie v. Gulf, Mobile & N. R. Co., 191 La. 163, 184 So. 711 as follows :
“ ‘Where a person says or does something, or remains silent when he should speak, with the intention of influencing another to act to his hurt, and the other is injured thereby, such person will be held estopped to change his position when the other seeks to enforce his rights. United States Fidelity & Guar *890 anty Co. v. Putfark, 180 La. 893, 158 So. 9; Taylor Company v. N. Y. & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379. The words and conduct must be of such a nature as would cause a person to take a course that he otherwise would not have taken but for such words and conduct. The words and conduct must have been designed to injure the other by misleading him on some material point. The other person must have acted to his injury by reason of the words and conduct.’ ”
In the present case the defendant represented to Mr. Randow, when they first examined the property, that the filling station location included the 40-foot strip in question. Then on giving to Mr. Randow the copy of the mortgage, from which to obtain the description of the property, defendant remained silent as to the fact that the description did not include the 40-foot strip. He stood by and remained silent while plaintiff built its improvements on the 40-foot strip. By these actions and by his subsequent execution of the letter of December 15, 1959, he unquestionably influenced the plaintiff to think the lease covered the 40-foot barrow ditch. The plaintiff was injured by this misrepresentation when it constructed its improvements on this strip of land, both the initial and the subsequent improvements. The doctrine of estoppel now must be applied to prohibit defendant from changing his position and asserting that the lease was not intended to cover the 40-foot strip in question. To hold otherwise would result in a gross inequity.
As noted by the trial judge, the court in the case of Standard Oil Company of Louisiana v. Futral, 204 La. 215, 15 So.2d 65 cited Rodgers v. S. H. Bolinger Co., 149 La. 545, 89 So. 688 to the effect that: “Equity may reform * * * even contracts unambiguous on their face on clear proof that, through fraud or error, the written instrument has been made to express a different purpose from that which the parties had agreed on and had intended to embody therein; but to support relief there must be clear proof of the antecedent contract and of the error in committing it to writing.” Under this statement of the law we think that even though the description of the property in the present lease was unambiguous on its face, the lease should be reformed because plaintiff was in error and this error was induced by the misrepresentations of the defendant.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.