195 So.2d 724 (1967)
Charles A. O'NIELL, Jr.
v.
Robert SONNIER.
No. 6905.
Court of Appeal of Louisiana, First Circuit.
February 6, 1967.
*725 Maurice J. Serpas, Galliano, for appellant.
Charles A. O'Niell, Jr., in pro. per.
Before LANDRY, ELLIS, and BAILES, JJ.
ELLIS, Judge.
In this suit, plaintiff seeks to have an injunction issue to prevent defendant from interfering with his activities on a certain strip of land leased to him by defendant. By way of reconventional demand, defendant seeks reformation of the lease contract so as to exclude certain land therefrom, and other relief relative to the use of the batture on Bayou Lafourche and the use of a certain pipe line.
From a judgment in favor of plaintiff on the main demand, defendant appealed, and plaintiff answered the appeal asking modification of the judgment in certain respects.
The facts of the case appear to be undisputed. For about fifteen years, prior to 1965, defendant was in plaintiff's employ as supervisor of his Golden Meadow operations. In 1961, plaintiff was looking for a tract of land on which to locate two 10,000 barrel oil storage tanks, with accompanying pipe lines and loading facilities along the bank of Bayou Lafourche. Defendant was, at that time, the owner of two tracts of land, which shall be known herein as the Curole tract and the Andrew Lefort tract.
The Curole tract is described in defendant's deed and in the subject lease, as follows:
"A certain tract of land situated in the Parish of Lafourche, in Section 21, Township 19 South, Range 22 East, containing 3.68 acres, more or less, bounded North and East by the lands of Lafourche Realty Company, South by the lands of Estate of Adrian Lefort, Andrew Lefort and Samson Lefort, and West and front by Bayou Lafourche."
After some negotiation, plaintiff agreed to lease the Curole tract from defendant. The entire lease reads as follows:
"Know all men by these present:
"That the undersigned Robert Sonnier, a resident of Lafourche Parish, owns the following described property situated in the Parish of Lafourche, viz:
"A certain tract of land situated in Section 21, Township 19 South, Range 22 East, bounded North and East by land of Lafourche Realty Company, South by the land of Adrien Lefort, and West by Bayou Lafourche, and containing approximately 3.68 acres, and being the same property acquired from Gracien Curole by deed of record in the Clerk's office of Lafourche Parish.
"NOW, for and in consideration of the sum of $700.00 cash in hand paid to the *726 undersigned, receipt of which is hereby acknowledged, the undersigned, Robert Sonnier, does hereby grant unto Charles A. O'Niell, Jr., a resident of Orleans Parish, a lease covering the surface of the following portion of said land for the purpose of erecting and maintaining thereon tanks for the storage of oil:
"Commencing 250 feet from Bayou Lafourche measuring the full width of the tract, on a line paralleling Bayou Lafourche, and extending 350 in depth, the full width of the tract, and rear line of the portion hereby leased lying 600 feet from, and parallel to Bayou Lafourche.
"The term of this lease is hereby fixed at 20 years, commencing this date, and the consideration aforesaid constitutes rental for the entire term. In other words, the lease is fully paid, by the consideration aforesaid, for the entire term of 20 years.
"In addition, and for the same consideration, Charles A. O'Niell, Jr., is hereby given right of way across the whole of said land for operation connected with the drilling, producing, gathering and transporting of oil on, or that produced from the above described land and other lands in the area thereof, including the right to lay and maintain pipe lines thereon, and the right to construct and maintain dock facilities on the front portion of the property abutting Bayou Lafourche, and to use said property for any purpose connected with such operations; provided that on the front 250 feet of said land, lines may only be laid parallel to the South line thereof and within 10 feet of said line.
"Signed this 2nd day of March, 1961, in the presence of the undersigned witnesses.
Witnesses
____________ Robert Sonnier
____________ Robert Sonnier"
However, at the time of the sale to defendant and the lease to plaintiff, a portion of the above described property, which constituted the Southwest portion thereof, was actually the property of Mrs. Thomas Dantin. That parcel was acquired by defendant on May 20, 1963, under the following description:
"A certain lot or tract of land, situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about fifty four (54) miles below the City of Thibodaux, Louisiana, measuring fifty (50) feet in width and fronting Bayou Lafourche, by a depth of two hundred twenty (220) feet from Bayou Lafourche water edge, bounded in the south, or below, north, or above, and the east or rear by lands of said vendee herein, Robert J. Sonnier, formerly by property of Gracien Curole."
Prior to the execution of the lease, the complete tank and loading installation was completed, with all construction being carried out under the supervision of defendant.
The loading hoist was located on the Dantin tract, and the pipe line was run across the Andrew Lefort and Samson Lefort tracts, which bordered the Dantin tract on the South side. As pointed out above, the Andrew Lefort tract was owned by defendant. It was 38 feet in width and lay about 100 feet from Bayou Lafourche. The Samson Lefort tract bordered the Andrew Lefort tract on the South and West, and formed the frontage on the bayou immediately to the South of the Dantin tract.
Pile clusters were located in Bayou Lafourche in front of the Samson Lefort tract in connection with the loading facility constructed by plaintiff. Plaintiff testified that all work done in Bayou Lafourche was done with proper permits from the Corps of Engineers, Greater Lafourche Port Commission, the Lafourche Parish Police Jury, and the Department of Public Works of the State of Louisiana, and there is nothing in the record to the contrary.
*727 It also appears from the record that a small portion of the firewall surrounding the tanks is located slightly less than 250 feet from the edge of Bayou Lafourche.
Apparently, the entire installation was operated without incident from prior to the date of the lease until May 25, 1965, shortly after defendant left plaintiff's employ, when defendant questioned plaintiff's use of the Dantin and Samson Lefort properties, which latter property had been acquired by the defendant on May 12, 1965.
After trial on the merits, the district court rendered judgment recognizing plaintiff's right of way across the Dantin property, but requiring him to relocate the pipe line to a point within 10 feet of the South line thereof, and enjoining defendant from interfering with plaintiff's use of the batture in front of the Dantin and Curole tracts.
Defendant then filed a motion for a new trial, alleging the following errors:
"a) Plaintiff's request for an injunction against the defendant's interference with plaintiff's use of the dock facilities in front of the Samson Lefort Tract should be denied, but was not mentioned in the judgment.
"b) Defendant's request for an injunction against plaintiff to remove the pipeline on the Andrew Lefort Tract was not mentioned in the judgment.
"c) Defendant's request for reformation of the original lease was not mentioned in the judgment.
"d) No judgment was rendered on Defendant's request that the firewall and pumping station be removed off the front 250 feet of the Gracien Curole and Mrs. Thomas Dantin Tracts.
"e) Defendant's right to damages should be reserved or a new trial granted for this purpose."
After argument on the motion, the Court decided that a new trial was not necessary, but recalled its original judgment, and signed a new judgment which, in addition to the above relief, granted plaintiff's request for an injunction restraining defendant from interfering with the use of dock facilities in front of the Samson Lefort property; denied defendant's alternative plea for a reformation of the lease to exclude the Dantin tract therefrom; reserved the defendant's right to damages in any of the matters involved in this case; dismissed as of non-suit defendant's request relative to the location of the firewall and pumping station on the front 250 feet of the Curole tract; and taxed costs equally to both parties.
Subsequent to the rendition of the judgment, plaintiff removed the pipe line to a point within 10 feet of and parallel to the South line of the Dantin tract.
Appellant alleges that the trial court erred in the following respects:
"1. In applying the after acquired title doctrine to the lease granted by appellant to appellee.
"2. By failing to decide that appellee has no right to erect cluster pilings adjacent to appellant's batture property.
"3. In failing to reform the property description in the lease agreement to conform with the true intent of the parties.
"4. In recalling the original judgment and changing it substantively after hearing oral argument on a motion for a new trial."
In granting plaintiff's prayer for an injunction, the trial court found that the doctrine of after acquired title was applicable to this situation, and that when defendant acquired the Dantin property it automatically became subject to the lease. Defendant takes the position that there is no law, statutory or otherwise, which requires the application of that doctrine to leases. It is conceded that the doctrine applies to sales and mortgages, but it is contended that if the legislature had intended that it *728 apply to leases it would have made specific provision for same.
We cannot agree with this contention. The doctrine of after acquired title with respect to sales has been recognized in this state without specific statutory authority. In the case of St. Landry Oil and Gas Co. v. Neal, 166 La. 799, 118 So. 24 (1928), the Supreme Court stated that the rule was applicable to mineral leases, and we cannot see why it should not be applicable to a surface lease as well.
In addition, Article 2692 of the Civil Code provides that:
"The lessor is bound from the very nature of the contract, and without any clause to that effect:
"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."
Having warranted his ownership of the property by the express terms of the lease, and being now the owner thereof, defendant cannot evade his legal obligations by pleading non-ownership of the property at the time of the execution of the lease.
In this connection, see Evangeline Refining Company v. Nunez, 153 So.2d 886 (La. App.1963).
We can find nothing in the record to indicate that neither party to the lease intended that the Dantin tract not be included in the lease. By his own action in locating the loading hoist in front of the Dantin tract, defendant has shown that his own intent was to include the tract in the lease. His silence for two years after he acquired the Dantin property is eloquent testimony to the same effect. Plaintiff testified that he was unaware of the ownership of the Dantin property at the time he entered into the lease.
Before one can obtain the reformation of an instrument because of mistake of fact, he must show the nature of the mistake, the correction which must be made, that the mistake was common to both parties to the instrument, and that neither intended the result achieved by virtue of the mistake. Weber v. H. G. Hill Stores, Inc., 210 La. 977, 29 So.2d 33 (1946). See also the case of Evangeline Refining Company v. Nunez, supra, a case remarkably similar to this one insofar as the ground for reformation of the lease is concerned. The above authorities also make it clear that one desiring a reformation of a contract bears a heavy burden of proof.
Sonnier has not carried this burden, particularly with respect to the question of mutuality of mistake. On the contrary, the facts of the case, when viewed in the light of the clear language of the lease, and the behavior of the parties subsequent to its execution, indicate that the only mistake was that of plaintiff in believing that Sonnier owned the Dantin property.
With reference to the question of the erection of cluster pilings adjacent to appellant's batture property, we find nothing in the record to support this demand. In his reconventional demand, defendant asked for an injunction to prevent plaintiff from using the pipe line across the Samson Lefort property, and from interfering with his use of the Dantin and Andrew Lefort tracts. No relief is sought relative to the use of the pile clusters in Bayou Lafourche. However, assuming that this question properly forms a part of the case, the record reflects that plaintiff had all necessary permits for the installation of the clusters; that the clusters were in fact installed under the supervision of defendant; and were in place in the Bayou at the time defendant purchased the Samson Lefort property.
Under Article 453 of the Civil Code, the ownership of the beds of navigable streams is vested in the public. Article 455 provides as follows:
"The use of the banks of navigable rivers or streams is public; accordingly every *729 one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload the vessels, to deposit his goods, to dry his nets, and the like.
"Nevertheless, the ownership of the river banks belongs to those who possess the adjacent lands."
In the light of the above authorities, and the factual circumstances existing in this case, it appears that Sonnier would not be entitled to the relief sought. See also Randolph v. B. D. Wood & Bro., Man.Unrep. Cas. 324.
Plaintiff answered the appeal, and asked that the portion of the judgment which dismisses as of non-suit defendant's request that the firewall and pumping station situated on the front 250 feet of the Curole and Dantin tracts be removed, be amended so as to dismiss the said request outright. Once again, the specific relief is not prayed for in the reconventional demand, and there seems to be no basis in the record for granting any relief relative to the location of the tanks, firewall or pumping station. In so doing, the district judge fell into error.
Finally, appellant contends that the trial court erred in recalling the original judgment and changing it substantively without granting a new trial. He cites in support of his argument Article 1951 of the Code of Civil Procedure, which reads as follows:
"A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party;
"(1) To alter the phraseology of the judgment, but not the substance; or
"(2) To correct errors of calculation."
There can be no question that in this case substantial changes were made in the substance of the original judgment, by adding to it certain things not contained therein originally, and by deleting therefrom one paragraph. Clearly, the judgment was without authority to so alter the judgment without granting a rehearing or a new trial. This the judgment specifically does not do. See Burnett v. Burnett, 170 So.2d 404 (La.App.1965); Allen v. Commercial National Bank in Shreveport, 243 La. 840, 147 So.2d 865 (1962).
Although it may seem unduly technical to remand a case in which a final judgment could be rendered on the basis of the record now before us, and particularly one in which the major issues have been correctly resolved by the trial court, we feel that the clear language of Article 1951 compels us to do so.
It should be pointed out that the second judgment, which was the judgment appealed from, was stricken with nullity from its inception, and that the first judgment rendered is the only valid judgment in the record. Because it does not properly dispose of the issues in the case, we are of the opinion that a new trial should be granted, limited to argument only, after proper amendment of the pleadings, to permit consideration by the court of the issues raised by the evidence introduced at the trial of the case.
For the above and foregoing reasons, the judgment appealed from is reversed and set aside, and the case remanded to the District Court for further proceedings in line with the expressions contained herein, with all costs of the appeal to be equally borne by the parties hereto, the question of costs to be left open pending final determination of the issues herein.
Reversed and remanded.