MARVIN, Judge.
Plaintiff appeals from the rejection of his demand for reformation of a deed of mineral royalty to him by the defendant in each of these consolidated cases. For the reasons we assign, we affirm.
Each royalty deed was prepared and mailed with one or more appropriate bank drafts by plaintiff to the defendant-grant- or. Except for the name of grantor and property description, the deeds were identical. Each deed recited:
“The royalty interests and rights herein sold . . . are:
“One-half (V2) of Grantor’s royalty . to be produced from lands above described, . . . ”[1]
Each bank draft recited that it was given for a specified number of net royalty acres in this language:
*533 “[X] net royalty acres in Section 30, Township 22 North Range 11 West, Bossier Parish, Louisiana.”
The drafts do not state the price per acre.
After production was obtained and division orders were circulated, plaintiff learned that each defendant had previously sold one-half of her royalty by a recorded royalty deed and that he or his assigns were being credited with only one-fourth royalty. These suits followed.
Before filing the suits for reformation, plaintiff deeded the whole of his royalty interest, permanently in most part and temporarily in the remaining part to Smack-over Producing Company. This company was not made a party to the suits. The lower court did not reach the merits of the demand for reformation but rejected plaintiff’s demand because plaintiff in each case had “failed to establish the actual ownership of all the mineral royalty in the defendant at the time of the sale.” We shall consider the merits of the evidence in support of the demand.
Plaintiff is experienced in oil and gas transactions. He claims that it was made clear to each defendant that he desired to purchase all of defendant’s royalty rights or 20.5 acres under each defendant’s property for $200 per acre. Plaintiff explained that his only examination of the public records was for the purpose of determining who owned what acreage in the area of plaintiff’s interest.
Defendants are elderly ladies in their seventies. They were generally aware of oil and gas activity in the area and that adjacent landowners and relatives were negotiating in various ways with their respective mineral rights. They denied any discussion with plaintiff or his landman before they received the deeds and drafts by mail. Plaintiff’s brief acknowledges that there “were little or no personal negotiations between the parties prior to the execution of the royalty deeds.”
After the deeds were executed, defendants did have some contact with plaintiff to secure for one defendant a portion of the $4,050 total consideration in cash ($2,000), with the remainder being paid in two bank drafts. The other defendant also requested that her consideration be paid in two drafts. Two drafts were desired by each defendant, dated in separate years, for income tax purposes. Defendants denied plaintiff’s testimony that he dealt with them on the basis of their assertion they owned all of the royalty and that they were receiving $200 per acre. They stated they disregarded the notations on the drafts about a specific number of “net royalty acres” because they did not fully understand the terminology. One of these ladies, who obviously counseled with each other, was released from a hospital only a short time before signing the deed. Indeed it is difficult for us to understand the terminology plaintiff employed in the drafts and in the royalty deed. See portion of deed quoted in footnote one.
The action to reform a contract on grounds of error or mistake is recognized in many Louisiana cases. The error or mistake sought to be corrected or reformed must be shown to have been mutual as to the contracting parties by clear proof of the strongest possible type. Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940). This is plaintiff’s burden which is “heavier than that in an ordinary civil case.” Bray v. Davis, 236 So.2d 827 (La.App. 2d Cir. 1970).
This burden was met under the circumstances in Evangeline Refining Company v. Nunez, 153 So.2d 886 (La.App. 3rd Cir. 1963).
The burden has not been met under the circumstances here.
At appellants’ cost, judgment in each case is AFFIRMED.

. “The royalty interests and rights herein sold, . are:
“One-half (V2) of Grantor’s royalty on oil, gas and other minerals in and under and to be produced from the lands above described, which royalty has been or may hereafter be reserved and retained by Grantor, . in any present or future mineral lease affecting said lands .
“This sale and transfer is not limited to royalties accruing under any lease presently affecting said lands but the royalty rights granted herein shall remain a charge and burden on the land herein described and binding on any future owners or lessees of said lands. In the event that any present lease should terminate and in the event Grantor, or Grantor’s heirs, successors or assigns acting for themselves, as mineral owners, without the granting of a mineral lease, should develop said lands and produce oil, gas or other minerals therefrom, the royalties to be delivered and/or paid to Grantee hereunder shall be one-fourth (’Ath) of the whole of any oil, gas or other minerals produced from said land by said mineral owner. “Grantor reserves the right to grant future leases affecting the above lands so long as there shall be included therein, the reservation of royalty rights not less than ‘/ath of 8/a ths of the oil, gas and other minerals produced, saved and marketed from said lands under the terms of such future lease and the Grantor further reserves the right to collect and retain all bonuses and rentals paid in connection with any present or future lease.”