415 So.2d 1003 (1982)
AMOCO PRODUCTION COMPANY
v.
TEXACO, INC.
No. 12984.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
*1004 Robert C. Smith, Gordon, Arata, McCollam & Stuart, John M. McCollam, New Orleans, for plaintiff-appellant.
Gene W. Lafitte, John M. Wilson, Joe B. Norman, Liskow & Lewis, W. J. Conrad, T. W. Cerniglia, Robert Plumb, New Orleans, for defendant-appellee.
Before GULOTTA, GARRISON and BARRY, JJ.
*1005 GULOTTA, Judge.
This dispute centers around whether Amoco is responsible for the payment, as a penalty cost, of 200% of the total cost of construction of a gas pipeline as claimed by Texaco, or 200% of Amoco's 25% share of the construction of the line.
The trial judge, by summary judgment, concluded that Texaco was entitled to recover 200% of the total cost of construction. Amoco appeals. We affirm.
Amoco Production Company and Texaco, Inc. entered into a joint operating agreement covering an offshore oil and gas lease in the Eugene Island area. Amoco owned 25% of the lease and Texaco owned the remaining 75%. The revenue and expenses were shared in those proportionate amounts, and Texaco is the operator of the well.
Texaco proposed to Amoco the construction and operation of a gas pipeline to transport gas from the well site to third-party purchasers. The proposal included an agreement by Amoco to bear 25% of the construction and operating costs.
Amoco notified Texaco in an April 26, 1972 letter that it was unwilling to contribute to the proposed construction and installation of the pipeline because it deemed the project to be "economically unattractive." After discussions regarding penalty construction costs to be assessed against Amoco because of its non-participation in the construction, plaintiff and defendant entered into the following letter agreement.
The pertinent part of the agreement drafted by Texaco on September 7, 1972 and accepted by Amoco on October 13, 1972, reads as follows:
"1....
2. In consideration for such risk and expense to be undertaken by Texaco, Amoco hereby relinquishes unto Texaco all of Amoco's rights and interest in its share of gas which is produced from the Eugene Island Block 275(A) Platform and the utilizing of said flowline until such time as Texaco has received out of Amoco's share of production 200% of the cost of the pipeline installation, 100% of operating expenses pertaining thereto, and 100% of the compression charges, which charges are outlined in Texaco's letter to you dated January 27, 1972."
In the letter agreement, Amoco relinquished its rights and interests in its share of the gas as provided in the above paragraph to allow Texaco to enter into a venture that Texaco felt was profitable and Amoco felt was not.
It is plaintiff's contention that because of the ambiguity in the October 13, 1972 letter agreement, the trial judge erred in not admitting into evidence and considering earlier communications to obtain the true intent of the parties. According to plaintiff, when the earlier correspondence is read together with the letter agreement, and parole evidence is considered after trial on the merits, plaintiff would establish defendant's entitlement only to 200% of plaintiff's 25% proportionate share of the construction costs.
In this connection, Amoco argues the trial judge erred in granting the summary judgment in favor of defendant where the critical issue to be determined is the intent of the parties to the letter agreement. Amoco claims because the agreement did not reflect the plaintiff's true intent, the contract should be reformed to reflect the assessment of penalty costs on Amoco's proportionate share of the total construction cost. Finally, Amoco claims that because of its unilateral error in the confection of the contract, the agreement should be rescinded.

PRIOR CORRESPONDENCE AND PAROLE EVIDENCE
We reject plaintiff's contention that the trial judge failed to consider prior correspondence and parole evidence prior to rendering the summary judgment. In the June 22, 1981 judgment, the trial judge specifically stated: "... Upon considering defendant's motion, the affidavit of Mr. Hester (with attached documents), the affidavit of Mr. Manning (with attached documents), the depositions on file, and the *1006 memoranda submitted by each side, .... and finding that the pleadings, depositions and answer to interrogotories, together with the foregoing affidavits, show that there is no genuine issue as to material fact and that mover is entitled to a judgment as a matter of law, and for oral reasons assigned on June 19, 1981; ..." In the oral reasons the trial judge referred to the earlier correspondence. In those reasons he stated that:
"... The court is of the opinion that the agreement entered into on September 7, 1972, culminated a series of back and forth recommendations by both companies as to what would be the end result of the cost of laying the pipeline..."
Again, in the oral reasons, the trial judge in referring to earlier correspondence stated:
"... Various correspondence went back and forth between the companies culminating in an agreement dated September 7, 1972."
We have no way of knowing what weight the trial judge gave to the earlier correspondence. However, when we read that correspondence and the letter agreement, we are led to conclude that Amoco agreed to pay 200% of the total construction cost of the pipeline and that amount would be deducted from "... Amoco's share of production..."
We are not persuaded by Amoco's reliance on the following language from Texaco's letter of July 21, 1972 as support for Amoco's interpretation.
"As an alternative to Amoco's participation in this line, Texaco will proceed at its sole cost, risk and expense in installing this line and proposes that Amoco relinquish to Texaco all of its rights and interest in its share of gas produced from this lease until such time as Texaco has received out of Amoco's share of production 200% of the cost of pipeline installation and operating expenses pertaining thereto, royalties applicable to this production, plus the compression charge outlined in our letter to you dated January 27, 1972, which would have been attributable to Amoco's share of the total cost." (Emphasis ours).
It is clear from a reading of the above language, together with the letter of July 21, that the phrase "... which would have been attributable to Amoco's share of the total cost" modifies only the phrase "compression charge" as outlined in the January 27 letter, and does not refer to "200% of the cost of pipeline installation and operating expenses", as contended by Amoco. The meaning of the above language when read with the earlier correspondence is clear. We find no ambiguity.
We likewise find no merit to Amoco's argument that evidence of custom and usage in the oil and gas industry should be admitted to interpret the agreement. LSA-C.C. Arts. 1963 and 1964 provide:
"Art. 1963. Clear intent unaffected by equity, usage or law. When the intent of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision, which the parties had no right to modify or renounce."
"Art. 1964. Incidents supplied by law, equity or usage. Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources."
Although Texaco concedes the agreement is contrary to established usage, evidence of custom and usage cannot be relied upon to reform or change an agreement that is not ambiguous, as in our case. Accordingly, we reject Amoco's argument.
Having so concluded, we cannot say the trial judge, acting on the motion for summary judgment, erred in his interpretation of the letter agreement in which Amoco agreed to pay 200% of the total cost of construction of the gas pipeline.

REFORMATION
We find no merit to plaintiff's contention that the agreement should be reformed to reflect Amoco's true intent.
*1007 The jurisprudence is clear that the burden is on one seeking reformation of an instrument to prove error by clear and convincing evidence. See Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (1957); Walker v. Jim Austin Motor Company, 162 So.2d 135 (La.App. 3d Cir. 1964), writ refused, 246 La. 354, 164 So.2d 353 (1964); Rougeau v. State Farm Mutual Automobile Ins. Co., 262 So.2d 803 (La.App. 3d Cir. 1972). Further, in an action for reformation based on error, a showing must be made by clear and convincing evidence that the error was mutual as to the contracting parties. See Prejeant v. Hero Lands Company, 244 So.2d 613 (La. App. 4th Cir. 1971); Campo v. LaNasa, 173 So.2d 365 (La.App. 4th Cir. 1964), writ denied, 175 So.2d 109, 247 La. 874 (1965); Adair v. Compton, 360 So.2d 532 (La.App. 2d Cir. 1978); and Jefferson Truck Equipment Co. v. Guarisco Motor Co., 250 So.2d 211 (La.App. 1st Cir. 1971).
Plaintiff's contention is that it unilaterally did not intend to agree to the penalty cost as contained in the letter of agreement as interpreted by Texaco and the trial judge. Absent a showing of mutual error, we reject Amoco's argument seeking reformation.

RESCISSION
Finally, we find no merit to plaintiff's argument that the agreement should be rescinded. This argument, like that seeking reformation, relies on plaintiff's claim of error in not intending to agree to that which was stated in the letter of agreement and the earlier correspondence.
A contract may be rescinded for unilateral error of fact that is the principal cause for making the contract, where the other party knows or should know it is the principal cause. LSA-C.C. Art. 1845; Deutschmann v. Standard Fur Company, Inc., 331 So.2d 219 (La.App. 4th Cir. 1976). Although error in the determining motive or principal cause vitiates consent and invalidates the contract, error as to a subsidiary motive does not. Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La.1979).
The issue in our case, therefore, is whether the amount of the penalty to be paid by Amoco was the principal cause of the agreement. We think not.
It is clear that the determining motive of the parties was to resolve whether Amoco would participate in the construction of the gas pipeline or whether Texaco alone would bear the cost. After negotiations, Amoco decided not to contribute toward the construction cost because it was not economically feasible in Amoco's opinion. The amount of the penalty was only subsidiary to the principal cause of the agreement, i.e., Amoco's non-participation in the construction. Accordingly, Amoco's unilateral error concerning the penalty cannot serve as a basis for rescission.
In Ardoin v. Central Louisiana Electric Company, Inc., 318 So.2d 5, (La.1975), in a dispute involving the determination of the responsibility for payment of cost for the extension of a water line, the Supreme Court affirmed the trial court's summary judgment concluding that the utility company was not obligated to extend the water main unless plaintiff paid the cost in accordance with a contract between the parties. Plaintiff argued that if defendant were not obligated to extend the water line as plaintiffs understood the contract required, plaintiff's misunderstanding was error that vitiates his consent. In rejecting this contention, the Supreme Court stated:
"... Such a contention cannot stand in the face of the contracts plain and unambiguous language. Nothing about the contract, or for that matter, the facts upon which it was based, indicates that there was error which would form the basis for avoiding the contract for lack of consent. LSA-C.C. Art. 1823.
A claimed error, as in the instant case, cannot have the effect of voiding a contract otherwise complete as to intent and purpose. Such result impairs the sanctity of obligations and nullifies the effect of law to which they are entitled. [Citations]"
The Ardoin court, concluding that the agreement between the parties was plain *1008 and unequivocal, rejected plaintiff's argument to rescind the contract.
In our case, we likewise conclude that the contract is plain and unequivocal and that plaintiff's error, if such existed, was an error of judgment and not in the clear meaning of the language of the letter of agreement and the earlier correspondence.
Accordingly, we reject the argument that the contract should be rescinded. Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.