EDWARD A. DUFRESNE, Jr., Judge Pro Tem.
This appeal involves a dispute between a petroleum products supplier and a convenience store owner who. entered into a lease whereby the supplier installed gasoline tanks and pumps in return for a percentage of the profits on gasoline sold at the store. Because we find no error in the trial court’s finding that there was mutual breach of 'the lease, thereby terminating it, or in its awarding of damages to the supplier against the corporate owner of the store, we affirm.
In February, 1981, the lease was entered into by Central Oil and Supply Corporation and Kenny Wagoner. Wagoner, the lessor, permitted Central, the lessee, to install underground tanks and pumps at his store. The lease provided that the equipment was to remain the property of Central, and at termination of the lease could be removed by it. In addition, only gasoline provided by Central was to be sold at the pumps. Wagoner's obligations were to promote *983 Central’s products and pay it one half of the profits on gasoline sold.
Although Wagoner was only a lessee of the convenience store at that time of the lease, he represented to Central that he was in fact the owner of the property. The lease was not recorded.
In December, 1981, Wagoner formed Stop-N-Go, Inc., with himself as sole stockholder. His capital contribution was his interest in the business, including the lease with Central, in return for which he received the stock. In January, 1982, Stop-N-Go, Inc. purchased the store property. From the purchase date until August 1982, Stop-N-Go continued to sell Central’s gasoline at the pumps.
Sometime in August, 1982, Central discovered that Stop-N-Go was failing to make payments to its account for the gasoline sold. Central thereupon locked the pumps, thus preventing Stop-N-Go from selling gasoline for some two hours.
In the meanwhile, Wagoner had transferred 95% of his stock in the corporation to Jimmy Pruitt, his father-in-law. In September 1982, Stop-N-Go leased the store to W.M. Ferrington who began selling through Central’s tanks and pumps gasoline which he provided. Ferrington failed to make a profit, and his lease was can-celled whereupon Stop-N-Go began selling gasoline supplied by Wilson Oil Company. At the time of trial, Stop-N-Go was still selling Wilson Oil’s products. Also at the time of trial Wagoner was in bankruptcy.
Based on the above facts, the trial court concluded that Stop-N-Go, Inc. had ratified the lease by continuing to sell Central’s products and using Central’s pumps and tanks. He further ruled that Stop-N-Go had violated the lease in not making timely payments to Central, and in selling Wilson’s products. He also ruled, however, that Central had also violated the lease in locking the pumps, rather than seeking legal redress. In regard to damages, the court noted that in continuing to use Central’s equipment to sell Ferrington and Wilson gasoline, Stop-N-Go had wrongfully converted that equipment to its own use. Accepting Central’s estimate of $42,000 as the cost of the equipment and allowing for depreciation, the court assessed damages of $40,500 against Stop-N-Go, Inc. Stop-N-Go, Inc. now appeals, and Central has answered the appeal.
Stop-N-Go first alleges that because the lease was not recorded at the time it purchased the property, it cannot be affected by the lease. This argument is without merit. When Wagoner formed the corporation, the lease was a part of his capital contribution, and thus came to be owned by the corporation. It thus acquired Wagoner’s right to enforce the lease against the lessee, Central Oil. Because the after acquired doctrine is applicable to leases, Stop-N-Go cannot now escape obligations arising under the lease on the grounds that it, or its predecessor in the lease, did not own the premises at the time the lease was confect-ed, O’Niell v. Sonnier, 195 So.2d 724 (La.App. 1st Cir.1967). The fact that the lease was not recorded is not pertinent here. Recordation only protects third parties. Here, when Stop-N-Go acquired the lease it became a party to that agreement, rather than a third party, and it cannot now assert the public records doctrine to escape its obligations under the lease, La.R.S. 9:2756.
The second allegation of error is that Stop-N-Go was improperly held to have wrongfully converted Central’s equipment to its own use. Again, we find no error in this holding. There is no question that Stop-N-Go continued to use the tanks and pumps for sale of gasoline provided by another distributor, and neither paid nor offered rent for such use. Nor did it ever offer to return the equipment to Central or demand its removal. These acts clearly constituted dominion over another’s property and were inconsistent with Central’s rights in the property, Lincecum v. Smith, 287 So.2d 625 (La.App. 3rd Cir.1973).
The final issues here, raised by Central Oil in its answer to the appeal, are whether the trial court erred in declaring the lease void for mutual breach, and further erred in declining to award damages *984 for lost profits. We disagree with both contentions.
As noted in Weber v. McMillan, 285 So.2d 349 (La.App. 4th Cir.1973), it is well established in our laws that a lessor may not disturb the possession of a lessee without first resorting to judicial process. Central argues that the locking of the pumps was not such any extreme act so as to effectively deprive the store of peaceable possession of the pumps and should not be considered a breach of the lease. The fact is, however, that this act as a total deprivation of use of the pumps by the store, and was thus clearly a breach of the lease, Watkins v. Waller Oil Co., Inc., 341 So.2d 1264 (La.App. 2nd Cir.1977). Further, the mutual breach of the lease terminated the obligations of the parties under that lease, and therefore Stop-N-Go was no longer obligated to pay one half of gasoline sale profits to Central. In this court’s opinion, the trial court correctly denied to Central lost profits which it claimed were due under the terms of the lease.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.