SHORTESS, Judge.
This appeal involves a dispute in which a lessee seeks compensation for the value of sugarcane plants and stubble from its lessors upon the termination of a verbal lease.
Everett J. Caballero, incorporator of Caballero Planting Company, Incorporated (plaintiff), had been a tenant on a tract of land in Ascension Parish growing sugarcane since 1963. He farmed this tract of land and others as a sole proprietor until October 1974, when he formed Caballero Planting Co., Inc. In 1986, Caballero transferred all stock in the corporation to his son, Chris Caballero, and retired. On October 23,1978, Armide Falcon and her husband acquired an undivided one-half interest in the land by an act of sale. Then, on August 17, 1987, Andrew Hymel, Sr. and his wife acquired the other undivided one-half interest in the property by an act of sale.
In 1978, when the land was sold to the Falcons, plaintiff had a written unrecorded lease with the Falcons’ vendor, which expired December 31, 1978. All subsequent leases between plaintiff and the Falcons were verbal and year-to-year. The only term was that plaintiff would pay the Falcons one-sixth of the proceeds from the sale of the crop for rental fees. After the Hymels acquired their portion of the property, they also entered into a verbal year-to-year lease with plaintiff with the requirement that plaintiff pay one-sixth of the proceeds from the sale of the crop for rental fees and continue to purchase at least 75% of its supplies from the Hymels’ supply store.
The Hymels and the Falcons sent plaintiff a letter dated December 29, 1989, telling plaintiff to vacate the premises because its lease would not be renewed. Plaintiff was notified in April 1990, it could remove its improvements, which remained on the Hy-mels’ and the Falcons’ land, with an obligation to restore the property to its former condition. On July 2, 1990, plaintiff filed a petition seeking compensation for improvements and plantings against the Hymels and *1279 the Falcons[1] (defendants) for the ■ sum of $38,488.97 with. legal interest, which plaintiff alleged | 3was for reimbursement for the value of the. plant cane and stubble left on the leased premises ($30,228.97), and the cost of clearing lines of trees on the premises ($8,260.00). Defendants answered the petition and reconvened requesting reimbursement of $15,610.00, the value of their plánt cane and stubble.[2] However, in September 1995, defendants amended their petition stating the amount of sugarcane on the property in 1963 was irrelevant, and requested an offset from the value of plaintiffs cane and the amount of sugarcane that was on the land in 1978 and 1987, when each defendant purchased their undivided one-half interests. Defendants also requested a credit for any payments' plaintiff received from damage to cane, which occurred after the cane harvest in 1989. A hearing was held on the matter in July 1996. The trial court found plaintiff was entitled to reimbursement for the value of the crops it left on defendants’ land, and defendants were entitled to an offset against the difference in the value of the crops that were on the land when defendants purchased the property and the value of the crops that plaintiff left when the lease terminated. Judgments were granted against Armide Falcon and heirs in the sum of $1,792.50 and against A.C. Hymel in the sum of $67.50. Plaintiff appeals.
Plaintiff, contends the trial court erred in finding an offset or restoration obligation existed in favor of defendants. Plaintiff maintains Louisiana Civil Code article 2720 provides there is a presumption that the thing subject to the lease is received in good order, and that thing must be returned in the same state. Therefore, the thing that was leased was the land and .not the crops. Plaintiff further contends the thing, i.e., the land, is all it was required to return to defendants and not the difference in crop value. Defendants assert that because plaintiffs lease was not recorded, it is protected by the public-records doctrine against having to honor it.
PUBLIC RECORDS DOCTRINE
The trial court found plaintiff owned the remaining crops, stating this fact was established by the “evidence, custom, and practice and [was] conceded in ^defendants’ brief.” This fact, however, was also established by law. In Broussard v. Northcott Exploration Co., Inc.,[3] where plaintiff also had a verbal unrecorded predial lease with the landowner, the supreme court held:
While growing crops belong to the landowner, they are a component part of the tract of land. LSA-C.C. 465 (West 1985). Componént parts of a tract of land are immovable ' property. LSA-C.C. 462 (Wést 1985). However, when the standing crops belong to á person other than the landowner, they become movables by anticipation. LSA-C.C. art. 474 (West 1985), and LSA-C.C. [art.] 491 (West 1985). As between Mr. Broussard and the landowners, the crops in question were movables by anticipation which were owned by Mr. Broussard. As to third persons such as Northcott, the crops remained immovable property owned by the landowner in the absence of any other recorded interest shown on the public records.
In Central Oil Supply Corp. v. Wagoner;[4] the court held, “Recordation only protects third parties.” In Central the court found once one acquires a lease, that person becomes a party to the lease; therefore, that person is no longer a third party and cannot assert the' public-records doctrine to escape liability under a lease.
Similar to the Broussard case, plaintiff in this case had only a verbal lease, which was not -recorded. While the public-records doctrine would protect a third party, it does not protect parties to the lease such as defendants. The record shows that both defen *1280 dants entered into oral leases with plaintiff after purchasing the property. Thus, they (defendants) became parties to the lease, instead of protected third parties. Plaintiff paid both defendants one-sixth of the proceeds from its crop as rent. Therefore, the crops owned by plaintiff were movables by anticipation.
RESTORATION OBLIGATION
As far as the issue of a restoration obligation due defendants, the trial court found, “[t]he lessee under an oral leaase [sic] is obligated to restore the land and cane acreage to its former condition at expiration of the lease, even in the absence of an express oral agreement on the issue.” It appears the trial court relied upon Civil Code articles 2719 and 2720 in making this finding.[5] These articles are notj^easily, compatible with this predial lease, as the record reveals an inventory was not taken of these premises. Article 2720, entitled “Return of things leased without inventory,” might be relevant to this situation, but it does not make a restoration obligation a default provision without the parties so providing in their lease. The cases relevant to articles 2720 and 2719 seem to refer more to a restoration obligation when damages have occurred on the leased property. Defendants do not complain, however, of damage to the land. Defendants merely contend because fewer acres remained in cultivation when plaintiffs lease was terminated than were on the land when, each defendant acquired the property, they should be reimbursed. But as stated above, the Code does not provide for this premise.
Had defendants intended to have this value restored, this condition could have been included in the oral lease. Just as the Hy-mels required plaintiff to purchase 75% of its supplies from their store, a restoration obligation could have been included as well. To find that plaintiff was obligated to restore this value absent a provision in the lease makes the restoration obligation a default provision, which is beyond the scope of articles 2719 and 2720.
The trial court erred in finding plaintiff was obligated to restore the value of the difference between the cane received by plaintiff, at the conception of the oral lease, and the cane left by plaintiff at the termination of the lease.
COMPENSATION FOR PLAINTIFF
The trial court found, “Caballero Planting Co[.], [I]nc. is entitled to be compensated for .[the] value of the crops left. This was established by the evidence and conceded in defendants’ brief.” However, Civil Code article 2726, which provides for improvements and additions made by lessee states, “[t]he right of the lessee to remove improvements and additions he has made to the thing is governed by Articles 493, 493.1, 493.2, and 495.” Because the improvements in question, i.e., the cane plants and stubble, are owned by someone other than the owner of the land (meaning they are not component parts of the immovable), article 493, ^entitled “Ownership of improvements,” is the applicable Codal article. Article 493 provides, in pertinent part,
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former *1281 condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership .of the improvements and .owes nothing to their former owner.
Under the above provision, ordinarily, the only remedy that would have been available to plaintiff after the lease was terminated would have been to remove the plantings within 90 days of defendants’ written demand. This case, however, came before us previously, after the trial court granted defendants’ motion for summary judgment. Defendants contended plaintiff was not entitled to any compensation for remaining plants or stubble on its land under the provisions of article 493. But we found defendants’ letter sent in April 1990, (advising plaintiff that it may remove whatever improvements or plantings, which belong to it located on defendants’ property, with the obligation to restore the property to its former condition) was not sufficient to constitute a “demand” within the meaning of article 493.[6] We stated in Caballero:
Initially, we have doubts as to whether the legislature intended art. 493 to apply to a crop such as sugarcane, planted by a lessee with the lessors’ full knowledge and consent, which has a growing season greatly in excess of ninety days.
[[Image here]]
However, we conclude that this letter did not sufficiently constitute a demand within the meaning of art. 493.
[[Image here]]
The letter in question did not demand, in any sense of the term, or even request that plaintiff remove its plant cane and stubble, but merely “advised” plaintiff that it could remove any plantings belonging to it which were located on defendants’ property. Since the consequence under art. 493 of a failure to remove one’s property within ninety days after a written demand to do so is so harsh, involving as it does the loss of property, we believe the requirement of a written demand must be strictly complied with by the party relying upon the provisions of this article.
Based upon our previous holding that plaintiff never received a proper demand within the meaning of the Code and the nature of this case, we find article 493 is not applicable in this instance. It also appears that a clear custom was not established in this situation as well. Therefore, according to Civil Code article 4, “[w]hen no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.” The record reveals defendants leased the land to a subsequent tenant after terminating plaintiffs lease. This tenant did use some of the plantings and stubble, which remained from plaintiffs tenancy. We find it is only equitable and just that plaintiff should be compensated for its plantings and stubble of which defendants and defendants’ tenant received a benefit. However, this remedy is only available depending on the circumstances because the legislature has established article 493 as the default provision when leases like, this one are terminated.
Accordingly, we affirm the trial court finding plaintiff entitled to a judgment against defendants and amend the judgment to award the sum of $30,415.00 against defendants, Armide Falcon and heirs and A.C. Hymel. We reverse the judgment awarding defendants any restoration damages. All costs are assessed to defendants.
AMENDED AND AS AMENDED, AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. In 1984, Falcon died and his only heir, was Hymel’s wife, his cousin. In 1995, Hymel’s wife died, and the petition was amended to add her heirs as defendants.

. Defendants alleged plaintiff left less cane on the leased property in 1989 when its tenancy expired than the amount that was on the property in 1963 when tenancy began.

. 481 So.2d 125, 128 (La.1986).

. 489 So.2d 982, 983 (La.App. 3d Cir.1986).

. Civil Code article 2719 provides:
If an inventory has been made of the premises in which the situation, at the time of the lease, has been stated, it shall be the duty of the lessee to deliver back everything in the same state in which it was when taken possession of by him, making, however, the necessary allowance for wear and tear and for unavoidable accidents.
Civil Code article 2720 provides:
If no inventory has been made, the lessee is presumed to have received the thing in good order, and he must return it in the same state, with the exceptions contained in the preceding article.

. See Caballero Planting Co., Inc. v. Hymel, 597 So.2d 35) 37-38 (La.App. 1st Cir.1992).